UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| THE ANCIENTREE CABINET CO., LTD ) <br> ) <br>         Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES, ) <br> ) <br>         Defendant. ) <br> ) | Court No. 20-114 |

# COMPLAINT

On behalf of The Ancientree Cabinet Co., Ltd., ("Ancientree" or "Plaintiff"), we hereby bring this civil action and allege the following:

## Parties

1. Plaintiff is a Chinese producer and exporter of merchandise subject to the antidumping Order on Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China.

2. Defendant is the United States of America acting by and through the U.S. Department of Commerce (the "Department").

## Jurisdiction

3. This action is brought pursuant to 19 U.S.C. § 1516a(a)(2)(A)(i)(II) and (B)(i) to contest the final determination by the Department under 19 U.S.C. §1673d, in the antidumping duty investigation of wooden cabinets and vanities from China. *See Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Antidumping Duty Order*, 85 Fed. Reg. 22,126 (April 21, 2020*); see also Wooden Cabinets and Vanities and*

1

*Components Thereof From the People's Republic of China: Corrected Notice of Final Affirmative Determination of Sales at Less Than Fair Value*, 85 FR 17855 (March 31, 2020).

    4.    Accordingly, this Court possesses jurisdiction over this action pursuant to 28 U.S.C. § 1581(c) and 19 U.S.C. § 1516a(a)(2).

## Standing

    3.    Plaintiff is a foreign exporter of the subject wooden cabinets and vanities. Accordingly, plaintiff qualifies as an interested party within the meaning of 19 U.S.C. §§ 1516a(f)(3) and 1677(9)(A).

    4.    In addition, because the Department made a Final Determination that was not lawful, or, otherwise overstated Plaintiff's antidumping duty margin, Plaintiff has been adversely affected or aggrieved by agency action within the meaning of Section 702 of Title 5 of the United States Code.  Therefore, Plaintiff has standing to bring this action under 28 U.S.C. § 2631(c).

## Timeliness

    5.    Notice of the antidumping duty order was published in the *Federal Register* on April 21, 2020.  Plaintiff filed a summons instituting this action on May 21, 2020, within thirty days after publication of the aforementioned antidumping duty order, serving notice of the action upon all other participants in the investigation on the same date.  Furthermore, Plaintiff is filing this complaint within thirty days after filing the aforementioned summons.  Therefore, Plaintiff has commenced this action within the time limits specified in 19 U.S.C. § 1516a(a)(2)(A), 28 U.S.C. § 2636(c), and Rule 3 and Rule 6 of the Rules of this Court.

**Statement of Facts**

6. On March 26, 2019, the Department initiated an antidumping duty investigation on Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China.

7. On June 4, 2019, the Department selected three mandatory respondents: Ancientree, Rizhao Foremost Woodwork Manufacturing Company Ltd. (Foremost), and Dalian Meisen Woodworking Co., Ltd. (Meisen).

8. Because this was a nonmarket economy order, the Department generally does not use respondents' actual cost records to value its inputs, home market sales, and financial statements for the purposes of calculating the normal value (a special form of constructed value particular to nonmarket economy investigations). Rather, the Department selects surrogate values from a surrogate country.

9. Petitioner argued that Romania should be selected as the primary surrogate country and submitted a Romanian surrogate value record. Plaintiff and the other two mandatory respondents in the investigation argued that Malaysia should be selected as the primary surrogate country and submitted a Malaysian surrogate value record.

10. In the Preliminary Determination, the Department selected Romania as the primary surrogate country stating that Romania had higher quality of data because the single Romanian financial statement separately broke out energy expenses. Prelim. IDM at 14. The Department calculated a margin of 4.49 percent for Ancientree, 80.96 percent for Foremost, and 39.25 percent for the separate rate companies. The third mandatory respondent, Meisen was assigned an AFA margin of 262.18 percent.

11. Plaintiff and the other respondents argued that the Department should select

Malaysia as the primary surrogate country in the Final Determination.  Plaintiff argued that the Department frequently relies on financial statements that do not break out energy and that given the other data advantages, Malaysia sources the best available information.  Critically, Malaysia sourced multiple highly comparable financial statements while Romania sourced only one financial statement from a less comparable producer.  Further, the sawnwood surrogate values in Malaysia were more specific than that available in Romania and the Romanian import values for these two critical sawnwood inputs were based on an insignificant, uncommercial quantity.

12.     Plaintiff also argued that even if the Department continued to rely upon Romania, the Department used the incorrect HTS as a surrogate value for glue, particleboard, MDF, and paint.  In addition, the financial ratios calculated by the Department for the Romanian company Sigstrat, were calculated using a different methodology than several prior reviews and investigations.  Plaintiff argued that not only did the Department not explain why it had changed its methodology, but the new calculation was less accurate and less detailed.

13.     Nonetheless, in the Final Determination the Department continued to rely upon Romania.  The Department agreed that it had relied upon the incorrect HTS to value Ancientree's glue input, but declined to make any further changes.  Notably, the Department did not even address Ancientree's argument concerning the Sigstrat financial ratio calculation.

14.     The Department calculated a final margin of 4.37 percent for Ancientree, 101.46 percent for Dalian Meisen, and 48.50 percent for the separate rate companies.  The third mandatory respondent, Foremost, received an AFA margin of 262.18 percent.

15.     This appeal ensued.

### Count 1

16. Plaintiff hereby incorporates, by reference, paragraphs 1 through 15, above.

17. The record as a whole did not support the selection of the Romania as the primary surrogate because there was better quality data available in Malaysia. As such, the Department's determination to rely upon Romania was unsupported by substantial evidence. *See* 19 U.S.C. §1516a(b)(1)(B)(i)(requiring the Department's determinations to be supported by substantial evidence); *see also* 19 U.S.C. §1677b(c)(1) (requiring the Department to rely upon the "best available information" for the surrogate values); 19 U.S.C. §1516a(b)(1)(B)(i) (the Court shall hold unlawful Department decisions that are unsupported by substantial evidence).

### Count 2

18. Plaintiff hereby incorporates, by reference, paragraphs 1 through 17, above.

19. The Department did not select the "best available information" for the surrogate values for birch and poplar sawnwood contrary to 19 U.S.C. §1677b(c)(1). As such, the Department's choice of surrogate values was unlawful and unsupported by substantial evidence. 19 U.S.C. §1516a(b)(1)(B)(i).

### Count 3

20. Plaintiff hereby incorporates, by reference, paragraphs 1 through 19, above.

21. The Department did not select the "best available information" for the surrogate values for particleboard, MDF, and paint contrary to 19 U.S.C. §1677b(c)(1). In part, the Department relied upon inaccurate harmonized tariff schedule numbers and classifications in so doing for each. As such, the Department's choice of surrogate values was unlawful and unsupported by substantial evidence. 19 U.S.C. §1516a(b)(1)(B)(i).

## Count 4

22. Plaintiff hereby incorporates, by reference, paragraphs 1 through 21, above.

23. The Department's calculation of Sigstrat's financial ratios was less accurate and the Department failed to explain why it had departed from its prior methodology. Therefore, the Department's ratio calculation was not supported by substantial evidence and was arbitrary and capricious. *See* 19 U.S.C. §1516a(b)(1)(B)(i); *see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (a decision may be arbitrary when it "entirely failed to consider an important aspect of the problem."); *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1007 (Fed. Cir. 2003) (If Commerce provides "no reasonable explanation" for changing a practice that it has "consistently followed," such a change is an unacceptable agency practice.).

## Prayer for Relief

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against the defendant:

(1) Declaring the Department's selection of Romania as the primary surrogate country unsupported by substantial evidence; and

(2) Declaring that the Department's choices of surrogate values for birch and poplar sawnwood were unsupported by substantial evidence; and

(3) Declaring that the Department's choices of surrogate values for Ancientree's particleboard, MDF, and paint inputs were unsupported by substantial evidence; and

(4) Declaring the Department's financial ratio calculation was unsupported by substantial evidence and its change in methodology was arbitrary and capricious; and

(5) Ordering that if the Department calculates a de minimis margin, the Department

must exclude Ancientree from the antidumping Order, and

    (6)    Granting Plaintiffs such other relief as the Court may deem appropriate.

        Respectfully submitted,

        /s/ Gregory S. Menegaz
        Gregory S. Menegaz
        Alexandra H. Salzman
        J. Kevin Horgan
        **deKieffer & Horgan, PLLC**
        Suite 410
        1090 Vermont Ave., N.W.  20005
        Tel: (202) 783-6900
        Fax:  (202) 783-6909
        email:  gmenegaz@dhlaw.com

Dated:  May 21, 2020