UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

| | | |
|---|---|---|
| THE ANCIENTREE CABINET CO., LTD., | ) ) ) | PUBLIC VERSION |
| *Plaintiff,* | ) ) | |
| and | ) ) | |
| CABINETS TO GO, LLC, | ) ) ) | |
| *Plaintiff-Intervenor*, | ) ) | |
| v. | ) ) | Court No. 20-00114 |
| UNITED STATES, | ) ) ) | |
| *Defendant,* | ) ) | |
| and | ) ) | |
| AMERICAN KITCHEN CABINET ALLIANCE, | ) ) ) | |
| *Defendant-Intervenor*. | ) ) | |

**DEFENDANT-INTERVENOR'S BRIEF
FOLLOWING THE APRIL 14, 2021 ORAL ARGUMENT**

Pursuant to the Court's instructions at the conclusion of the April 14, 2021 oral argument in the above-captioned action, Defendant-Intervenor the American Kitchen Cabinet Alliance ("AKCA") submits the following brief.

**I.   The Record Supports Commerce's Determination Not to Reject Romanian Import Statistics as Commercially Insignificant**

As the AKCA has previously demonstrated, the Court should uphold the determination by the U.S. Department of Commerce ("Commerce") not to reject the Romanian import statistics as commercially insignificant because: (1) Plaintiff failed to provide any evidence that would allow Commerce to analyze whether Romanian import statistics were commercially significant;

(2) the benchmark evidence that Plaintiff cites – including container loads, the respondents' consumption, and Malaysian import quantities – are either irrelevant or show that Romanian import statistics are, in fact, commercially significant; and (3) even assuming *arguendo* that the Romanian imports involve small quantities, Commerce does not disregard small import quantities unless the resulting average unit value ("AUV") is aberrational, and Plaintiff failed to show that the Romanian AUVs were aberrational. *See* AKCA Resp. (ECF 34) at 14-20; AKCA Answer to Questions (ECF 44) at 1-9; Tr. of Oral Arg. (Apr. 14, 2021) at 47:27-53:20. *See also Wooden Cabinets and Vanities and Components Thereof from China,* 85 Fed. Reg. 11,953 (Feb, 28, 2020) and accompanying IDM ("Final IDM") (P.D. 1554) at 37-43.

There is no merit to Plaintiff's contention that *Jacobi Carbons AB v. United States*, 313 F. Supp. 3d 1344, 1362 (Ct. Int'l Trade 2018) compels reversal in this case. In *Jacobi Carbons*, the Court remanded Commerce's determination because "Commerce's conclusory assertion regarding the significance of the imports into Thailand fails to apprise the court why 122 metric tons is sufficiently significant to yield a representative price in light of respondents' production experience" *Id.* at 1362. In particular, the respondent's consumption of 7,000 metric tons was over 57 times greater than the Thai import quantities of 122 metric tons of. *Id.* at 1362 n.28. The facts here are completely distinguishable. The chart below focuses, as Ancientree does, on consumption and imports of birch:

| Input | Ancientree Consumption | Foremost Consumption | Malaysian Imports | Romanian Imports |
|---|---|---|---|---|
| Birch | 2,500 | [        ] | 2,240 | 324 |

*Sources*: Pl. Answer to Questions (ECF 43) at 2; AKCA Answer to Questions (ECF 44) at 5.

First, Ancientree completely ignores Foremost's consumption experience in analyzing whether Romanian imports were commercially significant. In fact, Romania imported [

] Foremost's consumption of birch – showing that Romanian imports are commercially significant based on the standard applied in *Jacobi Carbons*. In addition, both Malaysian and Romanian imports were inadequate to supply Ancientree's consumption. Thus, a comparison of import quantities to the respondents' consumption quantities does not show that Romanian imports quantities are insignificant or that the Malaysian import data are somehow superior to the Romanian data.

## II.  Commerce Properly Found the Romanian Financial Statements to Be Preferable to the Malaysian Financial Statements

Commerce found that the Romanian financial statements were superior to the Malaysian financial statements because they "completely segregate two costs important to Commerce's analysis – energy and manufacturing overhead – whereas the Malaysian financial statements do not." Final IDM at Comment 6. Ancientree asserts that the Malaysian financial statements lack details for only one item – *i.e.,* energy expenses. This is not true. The Malaysian financial statements lack details for both energy and manufacturing overhead:

- Lii Hen's financial statements account for "Land and Buildings" and "Plant, machinery and equipment," but none of the other itemized expenses account for energy and other manufacturing costs that are not direct materials or direct labor and are indirect to the manufacturing operation of the company. *See* Ancientree Final SV Submission (P.D. 1328-1331) at Exhibit 3.

- Yeo Aik's financial expenses only identify depreciation and rental expenses as overhead items, and none of the other line-items appear to be related to indirect production expenses. *Id.* at Exhibit 7.

- Similarly, Poh Huat's financial statements contain some overhead items such as "depreciation of property, plant and equipment," but do not contain a comprehensive line item for overhead or any other line item related to indirect production expenses. *Id.* at Exhibit 5.

In it moving brief, Ancientree argued that the Malaysian financial statements were superior to the Romanian financial statements because they reflected the production of identical

3

merchandise. *See* Ancientree Br. (ECF 28) at 13-17. At oral argument, Ancientree emphasized that the Malaysian companies' production experience was more comparable to the respondents' production experience than that of the Romanian company. This argument is completely contradicted by the record evidence.

If this case were to boil down to which country offers financial statements with the most comparable production, Romania would still win over Malaysia. The Romanian company Sigstrat produces wooden furniture and plywood. Petitioner's SV Submission at Exhibit 10 (P.D. 956-961). These products both involve the production of merchandise that is comparable to wooden cabinets, vanities, and components thereof because they all involve cutting, sanding, pressing, and gluing wooden inputs to make the final product. *See* Petitioner's Rebuttal Brief (Dec. 27, 2019) at 14 (P.D. 1525); *see also* Final IDM at 36 (finding that the respondents' "production process includes stages that are comparable to plywood production, indicating that the mix of products manufactured by Sigstrat involves a reasonably-comparable production process to the mandatory respondents"). In other words, all of Sigstrat's production reflects the production of comparable merchandise.

In contrast, the Malaysian companies produce comparable and non-comparable merchandise and have business operations that do not even involve manufacturing:

- Lii Hen has a "rubber tree planation" with 3,473 hectares of permanent reserve forest land for planting and cultivating rubber wood trees. Ancientree Final SV Submission (P.D. 1328-1331) at Exhibit 3, pp 2-3. The plantation's operations include the installation of electric fences to deter "intrusion by wild elephants" – an activity which is hard to compare to producing wooden cabinets. *Id.* Lii Hen also produces upholstered furniture, which involves different inputs and production processes than wooden cabinets, and is involved in "kiln drying" and "timber processing." *Id.*

- Yeo Aik's financial statements include the operations of a subsidiary whose principal activities include "Investment holding and provision of management services." *Id.* at Exhibit 7, p. 31.

- Poh Huat produces furniture that contains as much metal as they do wooden components. *Id.* at Exhibit 4. Furthermore, Poh Huat states that its Malaysian operations produce "panel based" furniture, which is "primarily manufactured from laminated particle boards and metal parts," but its "wood-based furniture" is manufactured in Vietnam. *Id.* at Exhibit 4, pp. 13-14. Poh Huat also states that its principal business activities include "investment holding." *Id.* at Exhibit 5, page 1. Thus, it is unclear whether Poh Huat's Malaysian operations reflect the production of any comparable merchandise at all.

Nevertheless, even assuming that the Malaysian financial statements were equally comparable to the Romanian financial statements, Commerce's rejection of the Malaysian financial statements for lacking sufficient detail must still be upheld. This Court has repeatedly upheld Commerce's policy that "when available on the record {it prefers} to use financial statements that contain the full level of details." *Diamond Sawblades Manufacturers' Coal. v. United States*, 219 F. Supp. 3d 1368, 1381 (Ct. Int'l Trade 2017) (alternation in original); *GGB Bearing Tech. (Suzhou) Co. v. United States*, 279 F. Supp. 3d 1233, 1243 (Ct. Int'l Trade 2017); *China Manufacturers All., LLC v. United States*, 205 F. Supp. 3d 1325, 1352 (Ct. Int'l Trade 2017); *Qingdao Qihang Tyre Co. v. United States*, 308 F. Supp. 3d 1329, 1354 (Ct. Int'l Trade 2018).

    Respectfully submitted,

    */s/ Luke A. Meisner*
    Luke A. Meisner, Esq.

    SCHAGRIN ASSOCIATES
    900 Seventh Street, NW, Suite 500
    Washington, DC 20001
    (202) 223-1700

    Dated: April 8, 2021
    *Counsel for the American Kitchen Cabinet Alliance*

Dated: April 19, 2021

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing response brief contains 1,242 words (including text, quotations, footnotes, headings, and attachments) and therefore complies with the word limitation set forth by the Court in its instructions at the April 14, 2021 oral argument in this proceeding.


Dated: April 19, 2021                                             /s/ Luke A. Meisner
                                                                            Luke A. Meisner