UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE GARY S. KATZMANN, JUDGE

_____

|  |  |  |
|---|---|---|
| THE ANCIENTREE CABINET CO., LTD., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| CABINETS TO GO, LLC, | ) | |
| | ) | |
| *Plaintiff-Intervenor*, | ) | |
| | ) | |
| v. | ) | Court No. 20-00114 |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| *Defendant*, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AMERICAN KITCHEN CABINET ALLIANCE, | ) | |
| | ) | |
| *Defendant-Intervenors*. | ) | |
| | ) | |

## DEFENDANT'S POST-ARGUMENT SUBMISSION

Pursuant to the Court's invitation at oral argument held on April 14, 2021, the defendant, the United States, respectfully submits the following.

The Ancientree Cabinet Co., LTD (Ancientree) challenges the final affirmative determination in the Department of Commerce's antidumping investigation of wooden cabinets and vanities from the People's Republic of China. *Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Antidumping Duty Order*, 85 Fed. Reg. 22,126 (Dep't of Commerce Apr. 21, 2020), and accompanying Issues and Decision Memorandum (Dep't of Commerce Feb. 21, 2020) (IDM), P.R. 1554. To value the factors of production, Commerce selected Romania as the primary surrogate country because it determined

1

that Romania was at a comparable level of economic development as China, was a significant producer of comparable merchandise, and had reliable and useable surrogate value data. *See* Preliminary Decision Memorandum (PDM), P.R. 1407 at 14. Despite Ancientree's arguments about the "commercial quantities" of imports of certain factors of production into Romania, Ancientree does not challenge Commerce's finding that Romania met 19 U.S.C. § 1677b(c)(4)'s requirements for use as a surrogate country. Accordingly, Ancientree's arguments about the relative merits of the Romanian data amount to a request for this Court to reweigh the evidence.

During oral argument, Ancientree argued that Commerce incorrectly selected Romania as the primary surrogate country, and that Commerce should have instead selected Malaysia because the Malaysian surrogate financial data were superior. Specifically, Ancientree argued that Commerce should have used Malaysian financial statements because they included energy costs. The Court asked whether Commerce's preference for more specific financial statements outweigh statements from more comparable producers. The short answer is that yes; Commerce has a preference for more specific financial statements, which it applied here. *See, e.g.*, *Antidumping Duty Investigation of Certain Passenger Vehicle and Light Truck Tires from the People's Republic of China: Final Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, In Part*, 80 Fed. Reg. 34,893 (June 18, 2015), and accompanying IDM at Comment 9 ("The Department's practice is to reject those financial statements that are not sufficiently detailed, and specifically, that do not contain a breakout for energy costs, when there are alternative financial statements on the record that contain a line item for energy costs."); *see also* IDM at 34.

But, even if Commerce preferred to use statements from more comparable producers, Malaysian producers are not "more comparable" than Sigstrat. Sigstrat's financial statements

indicate that the company produces wood plywood, veneering, seats and backrests, chairs, tables, and other wooden products. IDM at 34-35; *see* Petitioner SV Comments at Exhibit 10B (Sigstrat Statements) at 1.1.a and 1.1.2. The financial statements of Poh Huat Furniture, however, state that it is "principally engaged in the businesses of manufacturing and sale of furniture and investment holding," but does not break down the costs and revenues of these different business units. *See* Ancientree Pre-prelim SV Comments at Exhibit 5, page 1. Similarly, the financial statements of Lii Hen state that "{t}here are six major subsidiary companies that are involved in the manufacture of a vast range of wood based products, namely bedroom sets, solid dinettes, office furniture, upholstery sofa set, utilities shelves, occasional items and kiln drying timber processing," but do not indicate what proportion of production or sales is related to upholstered furniture, utility shelves, and office furniture, products that may not be considered comparable. *See* Ancientree Pre-prelim SV Comments at Exhibit 3, at 2. As Commerce noted, Lii Hen is also engaged in cultivation of rubber trees and investments. *Id*. at note 37.

      Accordingly, Commerce weighed this evidence and determined that all three financial statements were from producers of comparable merchandise, and that the Romanian statement was preferable because it was more specific in that it broke out energy and manufacturing overhead, allowing Commerce to calculate a more accurate margin. IDM at 34-35. If Commerce had used the Malaysian statements, which did not break out energy, Commerce would have sacrificed "the accuracy of our calculations by not separately valuing multiple energy {factors of production (FOPs)} reported by respondents, and that were verified by Commerce, simply because we cannot determine where those energy FOPs are accounted for in the financial statements." IDM at 34. Although the Malaysian statements included energy costs, those statements did not separate out the energy costs such that Commerce could ensure it would

3

not "double count when valuing the respondents' energy FOPs." IDM at 44. By contrast, Sigstrat's financial statement "completely segregate{s} two costs important to Commerce's analysis—energy and manufacturing overhead," IDM at 33, leading Commerce to conclude that the Romanian financial statement was more specific and therefore preferable. In any event, "the mere fact that the record may support a different choice of financial statement does not mean Commerce's choice is unsupported by substantial evidence." *Diamond Sawblades Mfrs. Coal. v. United States*, 301 F. Supp. 3d 1326, 1355 (Ct. Int'l Trade 2018).

Ancientree also argued that Commerce used Harmonized Tariff Scheduled (HTS) values that were not specific to Ancientree's inputs. Nevertheless, Commerce determined, based on the record evidence, that it used the best available HTS values for Ancientree's sawnwood, MDF, particleboard, and paint inputs. With regard to the sawnwood inputs, Ancientree misrepresents the information that it provided to Commerce during the investigation. Ancientree's responses to the initial questionnaires did not, in fact, explain what type of sawnwood it used. Rather, Ancientree merely stated, in its surrogate value submissions, that it used birch and poplar sawnwood, and that the HTS values 4407.96.9090 and 4407.97.9090 would apply. *See* Ancientree Prelim SV Comments at Exhibit SV-1, P.R. 952-953; Ancientree Final SV Comments at Exhibit SV2-1, P.R. 1328-1331. These submissions did not include *any* information regarding whether the sawnwood is planed or end-jointed.

During the oral argument, Ancientree stated that it provided the necessary information about the type of sawnwood in its supplemental questionnaire response at SQ4-10. But, Commerce specifically cited this supplemental questionnaire response and stated that "Ancientree cites to no record evidence to support this claim {that its wood inputs are not planed or end-jointed}, nor does the record appear to describe Ancientree's wood inputs in any detail

greater than 'birch sawnwood' or 'poplar sawnwood.'"  IDM at 43-44 n.230.  Nevertheless, while Commerce aims to be specific, it is not required to perfectly replicate a non-market economy respondent's production experience.  *See Juancheng Kangtai Chem. Co. v. United States*, Slip. Op. 17-3, 2017 CIT LEXIS 3, *31 (Ct. Int'l Trade Jan. 19, 2017).

As for the MDF and particleboard, Commerce applied the particular HTS values because Ancientree itself stated that its MDF was "surface-covered," and submitted a brochure showing a laminate overlay for its particleboard.  Ancientree Admin. Case Br., P.R. 1523, at 12; Letter from deKieffer & Horgan PLLC to Sec'y Commerce, re: *Wooden Cabinets and Vanities from the People's Republic of China:  Section A Questionnaire Response* (July 3, 2019) at Exhibit A-5 ("Ancientree A IQR").  With regard to paint, Ancientree failed to provide sufficient evidence to substantiate its use of water-based paint.  Commerce examined the worksheets, accounting materials, and vouchers that Ancientree placed on the record, but could not verify what proportion of Ancientree's paint was water-based.  *See* Ancientree Verification Report at 18 (P.R. 1502, C.R. 1530).  During verification, Commerce did not observe any third-party source documentation or other documentation regarding the chemical composition for Ancientree's paint input, such as an ingredient list.  IDM at 56.  Commerce reviewed all the information on the record and reasonably determined that Ancientree did not sufficiently substantiate its claims.

        Respectfully Submitted,

        BRIAN M. BOYNTON
        Acting Assistant Attorney General

        JEANNE E. DAVIDSON
        Director

        /s/ Tara K. Hogan
        TARA K. HOGAN
        Assistant Director

OF COUNSEL:  
SAVANNAH ROSE MAXWELL  
Attorney  
Department of Commerce  
Office of Chief Counsel for Trade Enforcement & Compliance  
1401 Constitution Avenue, NW  
Washington, DC 20005  

April 19, 2021

/s/ Ioana Cristei  
IOANA CRISTEI  
Trial Attorney  
Commercial Litigation Branch  
U.S. Department of Justice  
Civil Division  
P.O. Box 480  
Ben Franklin Station  
Washington, D.C. 20044  
Tel: (202) 305-0001  
Fax: (202) 305-2062  
Email: Ioana.Cristei@usdoj.gov  

*Attorneys for Defendant United States*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing post-argument submission complies with this Court's instructions that this submission not exceed 1,250 words. The word count feature included in the Government's drafting software indicates that this submission, minus the caption and signature block, contains 1,247 words, including text, footnotes, and headings.

                    /s/ Ioana Cristei