## UNITED STATES COURT OF INTERNATIONAL TRADE

**Before: The Honorable Gary S. Katzmann, Judge**

| | |
|---|---|
| THE ANCIENTREE CABINET CO., LTD. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Court No. 20-00114 |
| | ) |
| UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## <u>PLAINTIFF'S COMMENTS IN OPPOSITION TO REMAND REDETERMINATION</u>

Gregory S. Menegaz
J. Kevin Horgan
Alexandra H. Salzman
**deKieffer & Horgan, PLLC**
Suite 410
1090 Vermont Ave., N.W.  20005
Tel: (202) 783-6900
email:  gmenegaz@dhlaw.com
*Counsel to Plaintiff*

Dated: November 12, 2021

## Table of Authorities

**Cases**

*Dak Ams. LLC v. United States*, 456 F. Supp. 3d 1340 (Ct. Int'l Trade 2020)...........................7-8

*Lasko Metal Prods. v. United States*, 43 F.3d 1442 (CAFC 1994).................................................1

*Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009) ............................................5

*Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139 (2005)........................................................8

*Pakfood Pub. Co. v. United States*, 753 F. Supp. 2d 1334 (Ct. of Int'l Trade 2011) ....................8

**Administrative Decisions**

*Certain Hardwood Plywood Products Final Determination of Sales at Less Than Fair Value, and Final Affirmative Determination of Critical Circumstances, in Part*, 82 Fed. Reg. 53,460 (November 16, 2017)...................................................................................................................6

*Chlorinated Isocyanurates From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2012-2013*, 80 FR 4539 (January 28, 2015) ..............5

*Multilayered Wood Flooring From the People's Republic of China: Final Determination of Sales at Less Than Fair Value*, 76 FR 64318 (October 18, 2011)..............................................2-3

*Multilayered Wood Flooring From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Results of New Shipper Review; 2012-2013*, 80 FR 41476 (July 15, 2015) ....................................................................................5

*Multilayered Wood Flooring Final Results of Antidumping Duty Administrative Review; 2013-2014*, 81 Fed. Reg. 46,899 (July 19, 2016) ...........................................................................6

*Multilayered Wood Flooring Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Final Partial Rescission of Antidumping Duty Administrative Review; 2014-2015*, 82 Fed. Reg. 25,766 (June 5, 2017) .....................................6

*Multilayered Wood Flooring Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Partial Rescission; 2015-2016*, 83 Fed. Reg. 35,461 (July 26, 2018) ...............................................................................................................6

*Multilayered Wood Flooring Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2016-2017*, 84 FR 38,002 (August 5, 2019) ...................6

*Multilayered Wood Flooring Final Results of Antidumping Duty Administrative Review and New Shipper Review and Final Determination of No Shipments; 2017-2018*, 85 FR 78118 (December 3, 2020) ....................................................................................................................7

*Utility Scale Wind Towers From the People's Republic of China: Final Determination of Sales at Less Than Fair Value*, 77 FR 75992 (Dec. 26, 2002)................................................................5

Plaintiff The Ancientree Cabinet Co., Ltd., ("Ancientree" or "Plaintiff") comments on the Department's Remand Results. *See* Remand Results (October 12, 2021); ECF 61; *see also The Ancientree Cabinet Co., Ltd. v. United States*, Court No. 20-00114, Slip Op. 21-87 (CIT July 12, 2021). This Court remanded one issue to the Department, finding that the Department "did not adequately explain its calculation of Sigstrat's financial ratios in light of Ancientree's direct contention that its calculation differed from its past decisions." Slip. Op. 21-87 at 27. The Department provided some further explanation but did not change its results in any respect, continuing to insist that its calculation of the Sigstrat financial ratios was the most accurate calculation based upon available record information.

While the Department has added further explanation, the ratio calculation is not the most accurate calculation (and therefore Ancientree's antidumping duty margin is not as accurate as possible)[1] and remains contrary to the Department's methodology and reasoning in other reviews. In the several other reviews and investigations where the Department has relied upon Sigstrat, the Department started with the line items in Sigstrat's profit & loss ("P&L") statement to calculate the financial ratios, which is its normal custom for calculating ratios generally.

In this investigation, the Department instead used notes 7 and 14 as the starting place to build up constructed P&L items and then calculate the ratios for Sigstrat. On remand, the Department now explains that it deemed reliance on notes 7 and 14 more accurate because they identify Sigstrat's costs by function while the profit & loss statement identifies Sigstrat's costs by type of transaction. The Department contends that notes 7 and 14 better allow the

---

[1] *See Lasko Metal Prods. v. United States*, 43 F.3d 1442 (CAFC 1994) (holding that accuracy is paramount in antidumping duty calculations).

Department to classify the costs as either manufacturing, operating, or financial expenses. Remand at 10.

However, it is the Department's normal and logical calculation methodology to start with the P&L statement in its ratio calculations.  The Department claims this is not the case, saying there is no "normal" way to calculate ratios and then misinterprets Ancientree's argument by suggesting Ancientree argued that the notes are not consulted when ratios are calculated. Remand at 23 & 33.  To the contrary, the notes to financial statements should be reviewed and considered, as they are an integral part of the financial statement; Ancientree's comments before the agency and this Court have never suggested otherwise.

What the Department glosses over is that the notes are the notes to the financial statement—i.e. the notes are further explanations of the balance sheet, profit and loss, statement of change in equity, and state of treasury flow.  *See* Sigstrat Statement at page 6 (Table of Contents providing the financial statement and then the notes to the financial statement) PD956-961.  The Department claims a financial statement does not "read like a novel, such that information on the last page is only meaningful after reading the previous pages."  Remand at 34. However, it is indeed not meaningful to read the notes to the profit and loss statement ("P&L") without first starting with the P&L.  The P&L statement, otherwise also known in shorthand as the "income" statement, is the sum of the how the revenues and expenditures resulted in the net profit.  The subsequent notes provide further details or breakdowns of those costs.  It is illogical to start with the notes and then takes some line items from the P&L statement rather than starting with the P&L statement and disaggregate costs (such as COGS) from the notes, which is what the company itself did.  Thus, the Department's calculation method in this remand is contrary to the flow of the statement.  *Multilayered Wood Flooring From the People's Republic of China:*

2

*Final Determination of Sales at Less Than Fair Value*, 76 FR 64318 (October 18, 2011) and

accompanying IDM at Comment 2 ("As stated above, because the Department cannot go behind

line items in the surrogate financial statements, the Department bases its determinations on the

information contained within the financial statements themselves.").

An examination of Sigstrat's P&L and Department's ratio calculation methodology

demonstrates how the normal method flows from the statement itself.  The Department's ratio

calculations in the past flow directly from the profit & loss and use the different expenditure

types delineated by the company:

Excerpt from Sigstrat P&L:

PROFIT AND LOSS ACCOUNT

FOR THE FINANCIAL EXERCISE 01.01 - 31.12.2018 (expressed in Leı)

| INDICATOR NAME | 31.12.2018 | 31.12.2017 |
|---|---|---|
| **Net turnover** | **27.093.475** | **28.835.201** |
| Income from current activity | 26.928.966 | 28.729.957 |
| Income from the sale of goods | 165.885 | 105.244 |
| Specialized corner discounts | 1.376 | - |
| Income related to current production cost (credit balance) | 7.589.460 | 3.511.935 |
| Income from the production of intangible and tangible assets | 308.107 | 319.851 |
| Other operating revenues | 2.181.818 | 1.859.039 |
| **OPERATING REVENUE - TOTAL** | **37.172.860** | **34.526.026** |
| Expenditure on raw materials and consumables | 18.581.300 | 15.791.056 |
| Other material expenses | 26.641 | 29.578 |
| Other outside expenses (with energy and water) | 1.534.472 | 1.451.981 |
| Expenditure on goods | 81.905 | 71.124 |
| **Staff costs - total** | **12.458.240** | **12.492.778** |
| Wages | 12.083.321 | 10.207.608 |
| Expenditure on insurance and social protection | 374.919 | 2.285.170 |
| Adjustment of value of tangible and intangible assets | 1.587.412 | 1.863.557 |
| Expenses | 1.587.412 | 1.863.557 |
| Adjusting the value of current assets | -49.497 | - |
| Income | 49.497 | - |
| Other operating expenses | 2.313.994 | 2.509.165 |
| Expenditure on external benefits | 1.852.500 | 2.113.680 |
| Expenses with other taxes and similar charges | 217.653 | 224.108 |
| Other expenses | 243.841 | 171.377 |
| Adjustments for provisions | - | -140.000 |
| Income | | 140.000 |
| **OPERATING EXPENDITURE - TOTAL** | **36.534.467** | **34.069.239** |

Excerpt of methodology from prior reviews (for 2017 statement)[2]:

| SC SIGSTRAT SA  *Financial Statements Year Ending December 31, 2017 (in Romanian Leu)* | | | | | | | |
|---|---|---|---|---|---|---|---|
| Items | Page (Part 2) | Main Statements | Notes to accts | Raw Materials (r) | Direct Labor ( l ) | Energy ( e ) | Mfg Overhead ( m ) |
| Revenue from production sold | | | | | | | |
| Revenue from sale of semifinished products | | | | | | | |
| Income from sale of residual | | | | | | | |
| Income from work performed and services rendered | | | | | | | |
| Rental income | | | | | | | |
| Net revenue | 9 | 28,835,201 | | | | | |
| Income from work in progress (credit balance) | 9 | 3,511,935 | | | | | |
| **Net sales and variation in inventories** | 21 | 32,347,136 | 32,347,136 | | | | |
| | | | | | | | |
| Raw materials and consumables expenses | 9, 21 | 15,791,056 | | 15,791,056 | | | |
| Other materials expenses | 9, 21 | 29,578 | | | | | 29,578 |
| Other external expenses (energy and water) | 9, 21 | 1,451,981 | | | | 1,451,981 | |
| Goods for resale | 9, 21 | 71,124 | | | | | |
| Personnel expenditure - total | 9, 21 | 12,492,778 | | | 8,490,790 | | |
| Value adjustment of tangible and intangible assets | 9, 21 | 1,863,557 | | | | | 1,863,557 |
| Third party service expenses | 9, 21 | 2,113,680 | | | | | |
| Other fees, taxes and similar expenses | 9, 21 | 224,108 | | | | | |
| Other Expenses | 9, 21 | 171,377 | | | | | |
| Adjustment related to provisions | 9, 21 | (140,000) | | | | | |
| **Operating Expenses** | 9 | 34,069,239 | | | | | |

But the Department's calculation in this case does not follow the flow of the financial:

| Items | Schedule | Income Statement Amounts | | Category | Materials and Labor | Energy | Mfg Overhead (MOH) | Traded / Finished Goods (TFG) |
|---|---|---|---|---|---|---|---|---|
| **REVENUE:** | | | | | | | | |
| Net turnover + Stocks Fluctuation | 7 | 34,682,935 | | Exclude | | | | |
| Other operating revenues | 7 | 2,489,925 | | SGA | | | | |
| Interest Income | P&L | 38 | | SGA | | | | |
| Financial Income | P&L | 193,953 | | SGA | | | | |
| Operating Revenue | | 37,366,851 | | | - | - | - | - |
| **EXPENSE:** | | | | | | | | |
| **Cost of Goods Sold** | 7 | 30,703,287 | | ML | 30,703,287.00 | | | |
| | | | | | | | | |
| Finished Goods Beginning | BS | | 3,664,861 | TFG | (3,664,861.00) | | | 3,664,861.00 |
| Finished Goods Ending | BS | | 3,843,275 | TFG | 3,843,275.00 | | | (3,843,275.00) |
| Indirect Production Expenses | 7 | | 8,512,590 | MOH | (8,512,590.00) | | 8,512,590.00 | |
| Other outside expenses (with energy and water) | P&L | | 1,534,472 | ENERGY | | 1,534,472.00 | (1,534,472.00) | |

The Department's methodology in this case runs contrary to the setup of the financial

statement and results in a less accurate calculation.

The Department's calculation makes several unsupported assumptions without

determining how note 7 related to the expenses in the P&L statement.  For example, the

Department took the line item "outside expenses (with energy and water)" from the P&L

statement and assigned it as energy expenses in the ratio calculation.  Then the Department took

"indirect production expenses" from note 7 and subtracted the "outside expenses (with energy

---

[2] *See* Ancientree Rebuttal SVs at Exhibit SVR-2; PD1007.

4

and water)" from the expense and assigned the remaining cost to overhead.  The Department is assuming both that the "outside expenses (with energy and water)" are all indirect production expenses and none of these expenses would be under "cost of goods sold" which the Department assigned to MLE denominator.  These Department decisions amount to pure speculation.  *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1327 (Fed. Cir. 2009) ("It is well established that speculation does not constitute substantial evidence.").

The Department's calculation also results in no separate breakouts for raw materials or labor, because the Department claims it cannot rely on the P&L line items for "raw materials and consumables expenses" or "personnel expenditure."  Therefore, the ratio calculation uses less line items from the statement, allowing for less separation of various different type of costs and a less specific and accurate ratio calculation.  *Chlorinated Isocyanurates From the People's Republic of China: Final Results of Antidumping Duty Administrative Review; 2012-2013*, 80 FR 4539 (January 28, 2015) at Comments 2C (discussing that use of more line items results in more reliable financial ratios); *Multilayered Wood Flooring From the People's Republic of China: Final Results of Antidumping Duty Administrative Review and Final Results of New Shipper Review; 2012-2013*, 80 FR 41476 (July 15, 2015) and accompanying IDM at Comment 7 ("The Department has in the past relied on secondary financial statements in instances where the record contained more detailed information regarding elements of the Department's surrogate financial ratio calculations that led to a more accurate calculation."); *Utility Scale Wind Towers From the People's Republic of China: Final Determination of Sales at Less Than Fair Value*, 77 FR 75992 (Dec. 26, 2002) and accompanying IDM at Comment 2 ("Because Asian Marine's financial statements do not itemize raw materials, labor, and energy, an unacceptable degree of estimation

5

would be required to derive the surrogate financial ratios from Asian Marine's financial statements.").

The Department also remains unconcerned with its departure from its methodology for calculating the ratios for this very company in past reviews and investigations. The Department has always started with the P&L statement, for this statement and in general, and then delineated out further costs in the notes as it was able to do reasonably. *Multilayered Wood Flooring Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2016-2017*, 84 FR 38,002 (August 5, 2019); *Multilayered Wood Flooring Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Partial Rescission; 2015-2016*, 83 Fed. Reg. 35,461 (July 26, 2018); *Multilayered Wood Flooring Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Final Partial Rescission of Antidumping Duty Administrative Review; 2014-2015*, 82 Fed. Reg. 25,766 (June 5, 2017); *Multilayered Wood Flooring Final Results of Antidumping Duty Administrative Review; 2013-2014*, 81 Fed. Reg. 46,899 (July 19, 2016); *Certain Hardwood Plywood Products Final Determination of Sales at Less Than Fair Value, and Final Affirmative Determination of Critical Circumstances, in Part*, 82 Fed. Reg. 53,460 (November 16, 2017). Rather than confront its own policy and institutional knowledge, the Department points out that the underlying calculations are not on the record for all of these cases and that the Department did not necessarily calculate all of the ratios in the same manner. Remand at 27. Even if the ratio calculation was not exactly the same from year to year, in the past, the Department did start with the P&L in each instance and then adjusted—a fact the Department cannot ignore.

Further, for this very same financial statement, the 2018 Sigstrat statement, the Department calculated the ratios declined to use notes 7 and 14 as it did *uniquely* in this

investigation.  Considering the same methodology proposed by the same petitioner, the

Department found it may be "distortive, as we do not know the components of the OH figure

which may include indirect labor expenses, thus potentially overstating OH."  *Multilayered*

*Wood Flooring Final Results of Antidumping Duty Administrative Review and New Shipper*

*Review and Final Determination of No Shipments; 2017-2018*, 85 FR 78118 (December 3, 2020)

and accompanying IDM at Comment 1.  The Department admitted that use of those figures

amounted to speculation in *MLWF 2017-2018*.  After considering the arguments, the Department

did determine it could include some additional information from note 4 regarding the materials

costs:

> we adjusted the COGS for the change in finished goods and removed the COGS of
> traded goods to derive the cost of manufacture of manufactured goods. **We backed
> out the items that can be reasonably identified as OH** (e.g., depreciation, other
> materials, third party expenses). We also used the SG&A expenses indicated in the
> notes by adding the revenue and costs from note 4 of the financial statement (these
> are the bolded items) and then demonstrated how the figures from the notes agree
> with the total revenues, expenses, and profit from the income statement. We note
> also that the SG&A ratio denominator is the COGS and the profit denominator is
> the COGS plus the SG&A expenses. Under this methodology we arrive at ratios of
> 12.68 percent for OH, 19.53 percent for SG&A, and 1.29 percent for profit.

*Id*.  (emphasis supplied).  In *MLWF 2017-2018*, the Department conceded that it could not

reasonably make adjustments of the type it has done here and did not do so.

The Department has not adequately or reasonably explained why it calculated the ratios

differently in this investigation or how accuracy has been increased by this change.  *Dak Ams.*

*LLC v. United States*, 456 F. Supp. 3d 1340, 1356 (Ct. Int'l Trade 2020) ("Not only does the

court's generalized concern with ensuring reasoned decision-making come to bear, but also

administrative law's long-standing and constant concern for consistency…Thus, where an agency

departs from prior determinations, it is appropriate to compel the agency to explain whether: (1)

good reasons prompt that departure; or (2) the prior determinations are inapposite such that it is not in fact a departure at all."). It is a critical imperative that in a world of limitless possibilities, this agency must be held to treating similarly situated importers the same. *Pakfood Pub. Co. v. United States*, 753 F. Supp. 2d 1334, 1342 (Ct. of Int'l Trade 2011) ('[I]t is well-established that an agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently.'); *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 139, 126 S. Ct. 704, 163 L. Ed. 2d 547 (2005) ("absent a rational explanation for acting to the contrary, like cases should be decided alike."). Internal inconsistency and self-contradiction do not satisfy this requirement.

In light of the foregoing, the Department's *Remand Redetermination* is not supported by substantial evidence because the Department did not rely upon the best available information for the financial ratios, which in turn led to less accurate antidumping duty margin calculations. *See Lasko Metal Prods. v. United States*, 43 F.3d 1442 (CAFC 1994) (holding that accuracy is paramount in antidumping duty calculations). Plaintiff respectfully requests that the Court remand this case for the Department to recalculate the financial ratios starting from the profit & loss statement consistent with its past practice, which results in the most accurate calculations of the surrogate financial ratios, and, in turn, in the most accurate calculation of Ancientree's antidumping duty margin calculation.

Respectfully submitted,

 /s/ Gregory S. Menegaz

Gregory S. Menegaz
J. Kevin Horgan
Alexandra H. Salzman*
**deKieffer & Horgan, PLLC**
Suite 410
1090 Vermont Ave., N.W.  20005
Tel: (202) 783-6900
Fax:  (202) 783-6909
email:  gmenegaz@dhlaw.com
Date: November 12, 2021            *Counsel to Plaintiff*

*Admitted to California Bar; practice supervised by
attorneys of the firm who are active D.C. Bar members
pursuant to D.C. Bar Rule 49(c)(8).

9

**Word Count Certificate of Compliance**

This brief has been prepared utilizing Microsoft Word 2007 using a proportionally spaced typeface (12 point Times New Roman font).

In accordance with this Court's Scheduling Order and the Chambers Procedures of the United States Court of International Trade, the undersigned certifies that his brief complies with the word limitations set forth.  Specifically, excluding those exempted portions of the brief, as set forth in 2 B (1) of the Chambers Procedures, I hereby certify that this brief contains **2,057** words. In accordance with the Chambers Procedures, this certified word count is based on the word count feature in the word processing system (Microsoft Word) used to prepare this brief.

/s/ Gregory S. Menegaz

Gregory S. Menegaz
**DEKIEFFER & HORGAN, PLLC**
Suite 410
1090 Vermont Ave., N.W.  20005
Tel: (202) 783-6900
Fax:  (202) 783-6909
email:  gmenegaz@dhlaw.com
*Counsel to Plaintiffs*