## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

**BEFORE**:   **THE HONORABLE GARY S. KATZMANN, JUDGE**

———————————————————————

|  |  |  |
|---|---|---|
| THE ANCIENTREE CABINET CO., LTD., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| CABINETS TO GO, LLC, | ) | |
| | ) | |
| *Plaintiff-Intervenor*, | ) | |
| | ) | |
| v. | ) | Court No. 20-00114 |
| | ) | |
| UNITED STATES, | ) | PUBLIC DOCUMENT |
| | ) | |
| *Defendant*, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| AMERICAN KITCHEN CABINET ALLIANCE, | ) | |
| | ) | |
| *Defendant-Intervenors*. | ) | |

———————————————————————

## DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION

BRIAN M. BOYNTON
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

TARA K. HOGAN
Assistant Director

Of Counsel:

IOANA CRISTEI
Trial Attorney
Commercial Litigation Branch
U.S. Department of Justice
Civil Division
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-0001

SAVANNAH ROSE MAXWELL
Attorney
Department of Commerce
Office of Chief Counsel for Trade
Enforcement & Compliance
1401 Constitution Avenue, NW
Washington, DC 20005

December 21, 2021                    *Attorneys for Defendant*

## TABLE OF CONTENTS

BACKGROUND ........................................................................................................... 7

    I.    Administrative Determination Under Review ...................................................... 7

    II.    The Court's Remand Order .............................................................................. 9

ARGUMENT ............................................................................................................... 10

    I.    Standard Of Review ....................................................................................... 10

    II.    Commerce's Calculation Of The Financial Ratios Is Supported By Substantial Evidence And In Accordance With Law ........................................................... 11

        A.    Commerce's Determination That Its Financial Ratio Calculation Methodology Was More Precise And Accurate Is Supported By Substantial Evidence ................................................................... 11

        B.    Commerce Reasonably Determined That Ancientree's Assertion of Commerce's Established Practice In Calculating Financial Ratios Is Not Substantiated By The Record .............................................. 15

    III.    Ancientree's Additional Arguments Do Not Undermine Commerce's Determination ................................................................................................. 18

CONCLUSION ............................................................................................................ 25

i

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Ancientree Cabinet Co., et al. v. United States*,
   532 F. Supp. 3d 1241 (Ct. Int'l Trade July 12, 2021) ......................................................2, 5, 7

*Consol. Edison Co. v. NLRB*,
   305 U.S. 197 (1938) .......................................................................................................... 6

*Consolo v. Fed. Mar. Comm'n*,
   383 U.S. 607 (1966) .......................................................................................................... 6

*CP Kelco U.S., Inc. v. United States*,
   949 F.3d 1348 (Fed. Cir. 2020) ......................................................................................21

*CP Kelco US, Inc. v. United States*,
   Ct. No. 13-00288, 2015 WL 1544714 (Ct. Int'l Trade 2015) .................................................14

*Goldlink Indus. Co. v. United States*,
   431 F. Supp. 2d 1323 (Ct. Int'l Trade 2006)........................................................................14

*Hebei Metals & Materials Imp. & Exp. Corp. v. United States*,
   366 F. Supp. 2d 1264 (2005) ..........................................................................................16

*I.N.S. v. Elias-Zacarias*,
   502 U.S. 478 (1992).......................................................................................................... 6

*MacLean-Fogg Co. v. United States*,
   100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ........................................................................ 6

*Mitsubishi Heavy Indus., Ltd. v. United States*,
   275 F.3d 1056 (Fed. Cir. 2001) ........................................................................................ 6

*Motor Vehicle Mfrs. Ass'n v. State Farm*,
   463 U.S. 29 (1983).........................................................................................................20

*Nantong Uniphos Chems. Co. v. United States*,
   415 F. Supp. 3d 1345 (Ct. Int'l Trade 2019)...............................................................*passim*

*Qingdao Sea-line Trading Co. v. United States*,
   766 F.3d 1378 (Fed. Cir. 2014) ........................................................................................15

*QVD Food Co., Ltd. v. United States*,
   658 F.3d 1318 (Fed. Cir. 2011) ..................................................................... 11, 12

*Sunpreme Inc. v. United States*,
   946 F.3d 1300 (Fed. Cir. 2020) ........................................................................14

*Stanley Works (Langfang) Fastening Sys. Co. v. United States*,
   Slip op.  2018-134 (Oct. 15, 2018) .....................................................................16

*Thai Pineapple Pub. Co. v. United States*,
   187 F.3d 1362 (Fed. Cir. 1999) ..........................................................................20

*Tianjin Machinery Import & Export. Corp. v. United States*,
   806 F. Supp. 1008 (Ct. Int'l Trade 1992) ...........................................................12

**Statutes**

19 U.S.C. § 1516a(b)(1)(B)(i) ................................................................................ 6

19 U.S.C. § 1677b(c)(1)(B) .................................................................................... 7

**Other Authorites**

*Corrected Notice of Final Affirmative Determination of Sales at Less-Than-Fair Value for*
*Wooden Cabinets and Vanities and Components Thereof from the Peoples Republic of China*,
   85 Fed. Reg. 17, 855 (Dep't of Commerce March 31, 2020) ................................... 3

*Final Determination of Sales at Less Than Fair Value*,
   76 Fed. Reg. 64,318 (Dep't of Commerce Oct. 18, 2011) .......................................17

*Final Results*,
   85 Fed. Reg. 11,953 (Dep't of Commerce Feb. 28, 2020) ..................................... 3

*Multilayered Wood Flooring from China:  Final Results of Antidumping Duty Administrative*
*Review and Final Determination of No Shipments; 2013-2014*,
   81 Fed. Reg. 46,899 (Dep't of Commerce July 19, 2016) .............................*passim*

*Multilayered Wood Flooring from China:  Final Results of Antidumping Duty Administrative*
*Review and Final Determination of No Shipments; 2014-2015*,
   82 Fed. Reg. 25,766 (Dep't of Commerce June 5, 2017)........................................11

*Multilayered Wood Flooring from China:  Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2015-2016*,
83 Fed. Reg. 35,461 (Dep't of Commerce July 26, 2018) ....................................................11

*Multilayered Wood Flooring from China:  Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments; 2016-2017*,
84 Fed. Reg. 38,002 (Dep't of Commerce Aug. 5, 2019) ..............................................*passim*

*Multilayered Wood Flooring from China:  Final Results of Antidumping Duty Administrative Review and Final Determination of No Shipments;2017-2018*
85 Fed. Reg. 78,118 (Dep't of Commerce December 3, 2020) ........................................16,  20

*Plywood from China*,
82 Fed. Reg. 53,460 (Dep't of Commerce Nov. 16, 2017) ....................................................11

*Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China:  Antidumping Duty Order*,
85 Fed. Reg. 22,126 (Dep't of Commerce April 21, 2020) .................................................... 3

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE**: **THE HONORABLE GARY S. KATZMANN, JUDGE**

| | | |
|---|---|---|
| THE ANCIENTREE CABINET CO., LTD., | ) | |
| *Plaintiff*, | ) | |
| CABINETS TO GO, LLC, | ) | |
| *Plaintiff-Intervenor*, | ) | |
| v. | ) | Court No. 20-00114 |
| UNITED STATES, | ) | PUBLIC DOCUMENT |
| *Defendant*, | ) | |
| and | ) | |
| AMERICAN KITCHEN CABINET ALLIANCE, | ) | |
| *Defendant-Intervenors*. | ) | |

## ORDER

Upon consideration of the plaintiff's comments regarding the remand redetermination, all responses thereto, and all other pertinent papers, it is hereby

ORDERED that the remand redetermination is sustained.

Date:_____                                     _____
         New York, NY                                                              Judge

5

**UNITED STATES COURT OF INTERNATIONAL TRADE**

**BEFORE**: **THE HONORABLE GARY S. KATZMANN, JUDGE**

| | |
|---|---|
| THE ANCIENTREE CABINET CO., LTD., ) | |
| ) | |
| *Plaintiff*, ) | |
| ) | |
| CABINETS TO GO, LLC, ) | |
| ) | |
| *Plaintiff-Intervenor*, ) | |
| ) | |
| v. ) | Court No. 20-00114 |
| ) | |
| UNITED STATES, ) | PUBLIC DOCUMENT |
| ) | |
| *Defendant*, ) | |
| ) | |
| and ) | |
| ) | |
| AMERICAN KITCHEN CABINET ALLIANCE, ) | |
| ) | |
| *Defendant-Intervenors*. ) | |

## DEFENDANT'S RESPONSE TO COMMENTS ON REMAND REDETERMINATION

Defendant, the United States, respectfully submits this response to the comments submitted by plaintiff The Ancientree Cabinet Co. (Ancientree), and defendant-intervenor American Kitchen Cabinet Alliance (AKCA), concerning the remand redetermination filed by the United States Department of Commerce. *See* Remand Redetermination (Oct. 12, 2021), ECF No. 61; Ancientree Cmts., ECF No. 67; AKCA Cmts., ECF No. 66. As discussed below, the remand redetermination complies with the Court's remand order in *The Ancientree Cabinet Co., et al. v. United States*, 532 F. Supp. 3d 1241 (Ct. Int'l Trade July 12, 2021) (*Remand Order*), ECF No. 59. The Court should sustain the remand redetermination and enter final judgment for the United States because Commerce has complied with the Court's order, and because the

remand redetermination is supported by substantial evidence and otherwise in accordance with law.

## BACKGROUND

I.   Administrative Determination Under Review

This case concerns Commerce's final affirmative determination in the antidumping duty investigation of wooden cabinets and vanities from the People's Republic of China. *Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Final Results*, 85 Fed. Reg. 11,953 (Dep't of Commerce Feb. 28, 2020) (*Final Results*) (P.R. 1559),[1] and accompanying Issues and Decision Memorandum (IDM) dated February 21, 2020 (P.R. 1554); corrected by *Corrected Notice of Final Affirmative Determination of Sales at Less-Than-Fair Value for Wooden Cabinets and Vanities and Components Thereof from the Peoples Republic of China*, 85 Fed. Reg. 17,855 (Dep't of Commerce March 31, 2020) (P.R. 1575); *Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Antidumping Duty Order*, 85 Fed. Reg. 22,126 (Dep't of Commerce April 21, 2020).

To calculate the overhead, selling, general and administrative expenses, and profit surrogate financial ratios used for determining normal value, Commerce used the 2017-2018 financial statements of S.C. Sigstrat S.A. (Sigstrat), a Romanian producer of plywood and veneers. These financial statements were provided by AKCA, along with its suggested financial ratio calculations. In response to AKCA's surrogate value comments, Ancientree submitted a spreadsheet with its own suggested financial ratio calculations. Ancientree also submitted the financial ratio calculations spreadsheet from *MLWF from China 2016-2017*, a case where

---

[1] "P.R." and "C.R." refer to public and confidential documents, respectively, in the investigation record, while "P.R.R." and "C.R.R." refer to documents in the public remand record and confidential remand record.

Commerce relied on Sigstrat's financial statements from 2016 to 2017. *See* American Kitchen Cabinet Alliance (AKCA) Letter re: Surrogate Country Comments, dated July 16, 2019 (P.R. 898); AKC Alliance Letter re: Petitioner's Initial Surrogate Value Comments, dated August 7, 2019 (AKCA SV Comments), P.R. 956-961 at Exhibits 10A and 10B. Ancientree argued that Commerce should use its calculation because it followed the methodology used in *MLWF from China 2016-2017* (albeit with some modifications). *See* Ancientree re: Rebuttal Preliminary Surrogate Value Submission, dated August 19, 2019 (Ancientree Rebuttal SV Comments), P.R. 1007-1008;1-2 and Exhibits SVR1 and SVR2 (referencing *MLWF from China 2016-2017*, and citing Memorandum, "Antidumping Duty Administrative Review of Multilayered Wood Flooring from the People's Republic of China; 2016-2017: Surrogate Values for the Preliminary Determination," dated December 17, 2018) (*MLWF from China 2016-2017* SV Memorandum).

In the preliminary determination, Commerce used a financial ratio calculation methodology containing elements from each suggested methodology provided in the parties' surrogate value comments (*e.g.*, similar to the suggestion provided by AKCA, Commerce started with Note 7 and Sigstrat's cost of goods sold to calculate the financial ratios).[2] Additionally, consistent with the suggestions provided by Ancientree, Commerce included segregated energy costs in the calculation of the denominators.[3] Thus, the preliminary financial ratio calculation methodology incorporated aspects of both AKCA's and Ancientree's suggested calculations.

After Commerce issued its preliminary determination, Ancientree argued that Commerce should recompute the surrogate financial ratios using Ancientree's suggested methodology. *See*

---

[2] *See* AKCA's SV Comments at Exhibit 10A (P.R. 956-961) *cf.* Preliminary SV Memorandum, dated October 13, 2019, P.R. 1411-12 at Exhibit 12 (P.R. 1411, C.R. 1435); PDM at 13.

[3] *See* Preliminary SV Memorandum at Exhibit 12 (P.R. 1411, C.R. 1435) *cf.* Ancientree's SV Rebuttal at Exhibits SVR-1 and SVR-2 (P.R. 1007-1008).

Ancientree's Admin. Case Br. at 15 (P.R. 1511).  AKCA filed a rebuttal to Ancientree's case brief, and agreed with Commerce's financial ratio calculation methodology.  *See* AKCA Rebuttal Admin. Case Br. at 22-25 (P.R. 1515).  In the final determination, Commerce made no changes to the financial ratio calculations.  *See* Memorandum, "Surrogate Value Memorandum for the Final Determination," dated February 21, 2020 (Final SV Memorandum) at Attachment 12 (P.R. 1560, C.R. 1556).

II.     The Court's Remand Order

On July 12, 2021, the Court held that Commerce did not adequately address Ancientree's case brief comments on the calculation of the surrogate financial ratios.  *See Remand Order*, 532 F. Supp. 3d at 1260.  Thus, the Court remanded Commerce's calculation of the surrogate financial ratios, specifically computed using the Sigstrat's financial statements.  *Id*. The Court ordered Commerce to address the objections raised by Ancientree to the calculation, and for Commerce to explain its departure, if any, from its previous calculation methodologies.  *Id*. at 1261.

On September 10, 2021, Commerce issued a draft remand redetermination.  (P.R.R. 1). Consistent with the Court's remand order, Commerce examined the arguments Ancientree raised in its administrative case brief.  According to this examination, Commerce determined that its calculation of the surrogate financial ratios using the more detailed information in Note 7 of the financial statements rather than the income statement line item allowed for a more accurate calculation.  *See Remand Redetermination* at 20.  Commerce also examined the prior cases Ancientree cited and determined that none of the prior cases created an established practice that Commerce failed to follow in this case.  *Id*.  Both Ancientree and AKCA submitted comments. Ancientree's Letter, "Comment on Draft Remand Redetermination," dated September 17, 2021 (Ancientree's Draft Remand Comments) (P.R.R. 3); and AKCA's Letter, "Comments on Draft

Remand Redetermination," dated September 17, 2021 (AKCA's Draft Remand Comments) (P.R.R. 2). After considering the parties' comments, Commerce continued to calculate the surrogate financial ratio consistent with its calculation in the final determination, starting with the cost of goods sold in Note 7 of the financial statement. *See generally Remand Redetermination*.

## **ARGUMENT**

I.    <u>Standard Of Review</u>

In remand proceedings, the Court will sustain Commerce's determinations if they are "in accordance with the remand order," and are "supported by substantial evidence, and are otherwise in accordance with law." *See MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade 2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Under this standard, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966) (citations omitted).

A party challenging Commerce's factual determinations under the substantial evidence standard has "chosen a course with a high barrier to reversal." *Mitsubishi Heavy Indus., Ltd. v. United States*, 275 F.3d 1056, 1060 (Fed. Cir. 2001). Instead, when, as here, Congress has entrusted an agency to administer a statute that demands inherently fact-intensive inquiries, Commerce's conclusions may be set aside only if the record contains evidence "so compelling that no reasonable factfinder" could reach the same conclusion. *See I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 483-84 (1992).

II.     Commerce's Calculation Of The Financial Ratios Is Supported By Substantial Evidence
        And In Accordance With Law

        The Court remanded the surrogate financial ratio calculation, holding that Commerce did

not adequately address Ancientree's arguments opposing the methodology used for the

calculation.  *Remand Order*, 532 F. Supp. 3d at 1260-64.  The Court noted that the methodology

Commerce used for calculating the surrogate financial ratios in this investigation differed from

the methodology it used in *MLWF from China 2016-2017*, although both proceedings relied on

Sigstrat's financial statements (albeit from different years).  *Id.* at 1260 (citing *Multilayered*

*Wood Flooring from China:  Final Results of Antidumping Duty Administrative Review and*

*Final Determination of No Shipments; 2016-2017*, 84 Fed. Reg. 38,002 (Dep't of Commerce

Aug. 5, 2019)(*MLWF from China 2016-2017*)).  Accordingly, the Court instructed Commerce to

address Ancientree's case brief arguments and explain why Commerce changed the financial

ratio calculation methodology used in this investigation from that used in *MLWF from China*

*2016-2017*.  Consistent with the Court's remand order, Commerce examined the arguments

Ancientree raised in its administrative case brief.  According to this examination, Commerce

determined that its calculation of the surrogate financial ratios using the cost of goods sold from

Note 7[4] of the financial statements—and not using the income statement line items as Ancientree

suggested—allowed for a more accurate calculation of the surrogate financial ratios.  *See*

*Remand Redetermination* at 20.

        A.      Commerce's Determination That Its Financial Ratio Calculation Methodology
                Was More Precise And Accurate Is Supported By Substantial Evidence

        Pursuant to 19 U.S.C. § 1677b(c)(1)(B), "the valuation of the factors of production shall

be based on the best available information regarding the values of such factors{.}"  Commerce's

---

    [4]  Note 7 contains the same information as Note 4.

preference is to calculate the financial ratios starting from cost of goods sold, when available. *Remand Redetermination* at 10-11 (citing *Nantong Uniphos Chems. Co. v. United States*, 415 F. Supp. 3d 1345, 1355 (Ct. Int'l Trade 2019)).   Commerce has formed this preference because the cost of goods sold specifically identifies the direct and indirect manufacturing costs necessary for Commerce's financial ratio calculations.   These manufacturing costs are a core component to calculating the financial ratios.   Therefore, when Commerce calculates surrogate financial ratios to value overhead costs, selling costs, general and administrative expenses, and profit in a non-market economy proceeding, Commerce selects the best information on the record of the proceeding for direct manufacturing costs. *Remand Redetermination* at 11. Selecting the best record information for the total direct manufacturing costs used in the financial ratio calculations is integral to the accuracy of Commerce's calculations because the denominator of Commerce's surrogate financial ratios incorporates the surrogate producer's total direct manufacturing costs. *Remand Redetermination* at 11-12.

This Court has, in several cases, sustained Commerce's preference for starting with the cost of goods sold.  For example, in *Nantong*, this Court sustained Commerce's decision to select financial statements that specifically reported a surrogate company's cost of goods sold.  In that case, Commerce argued that it prefers to use the cost of goods sold for calculating direct manufacturing expenses over relying on individual income statement line items. 415 F. Supp. 3d at 1355.  Specifically, Commerce explained that it did not prefer to add various individual entries for items such as wages and salaries that may, or may not, relate to the manufacture of a product. *Id.* ("By definition, *the cost of goods sold entry captures all of the costs of manufacture*.") (emphasis added).

Here, Commerce evaluated the three proposed methodologies for calculating the surrogate financial ratios to determine which methodology would be best. *Remand Redetermination* at 10. AKCA provided its methodology along with the Sigstrat FY 2017-2018 contemporaneous financial statements covering the entire period of investigation, and an English translation. Under AKCA's methodology proposal, Commerce would begin the calculation with the cost of goods sold from Note 7 of Sigstrat's financial statements. *See* AKCA's SV Comments at Exhibits 10A and 10B; *see also Final Determination* IDM at 33. Ancientree provided two methodologies: (1) its own calculation using the 2017-2018 Sigstrat financial statements, which it stated was based on Commerce's methodology in *MLWF from China 2016-2017*; and (2) a spreadsheet with Commerce's calculation from *MLWF from China 2016-2017*. *See* Ancientree's Rebuttal SV Comments at Exhibits SVR-1. Both methodologies submitted by Ancientree proposed starting with line items from Sigstrat's income statement (*i.e.*, costs identified by the type of transaction). *Id.*

In the final determination, Commerce agreed with AKCA that the cost of goods sold from Note 7 of the Sigstrat statements was the appropriate starting point for the financial ratio calculations. *See* Final SV Memorandum at Attachment 12 (P.R. 1560, C.R. 1556). Commerce specifically stated that Note 7 identifies Sigstrat's costs by function (*i.e.*, cost of goods sold, selling, general and administrative expenses, *etc.*), not by the type of transaction. This identification of costs allows Commerce to properly classify the costs as either manufacturing, operating (*i.e.*, selling, general and administrative costs), or financial expenses. *Remand Redetermination* at 10-11. Commerce also determined it could use the change in finished inventory, as reported on the balance sheet, and the cost of goods sold, as reported in Note 7, to

accurately calculate the cost of manufacturing, as well as segregate the cost of manufacturing between direct manufacturing costs and factory overhead.[5]  *Remand Redetermination* at 10-11.

Were Commerce to instead begin the calculation with the line items from Sigstrat's income statement, as suggested by Ancientree, Commerce would be unable to ascertain Sigstrat's direct manufacturing costs.  These line items include costs related to both the cost of manufacturing and selling, and to general and administrative expenses, and do not distinguish between the two.  Such comingling of different costs makes it impossible for Commerce to ascertain direct manufacturing costs.  *Remand Redetermination* at 13.  By instead relying on Note 7, Commerce was able to start from cost of goods sold and, importantly, *specifically identify the direct and indirect manufacturing costs necessary for the financial ratio calculations*.  Using the cost of goods sold then, allowed Commerce to avoid the uncertainty— and potential distortion—that comes with "adding various individual entries … that may, or may not, relate to the manufacture of {the} product."  *See Nantong*, 415 F. Supp 3d at 1355.

Commerce accordingly determined that its methodology—starting with cost of goods sold from Note 7 of Sigstrat's financial statements that by its nature captures all costs of manufacture—was preferable to the methodologies submitted by Ancientree—using line items from the income statement that do not distinguish between manufacturing and administrative costs.  *See Remand Redetermination* at 13; *see* Preliminary SV Memorandum at Exhibit 12, unchanged in Final SV Memorandum at Attachment 12.  Thus, Commerce's financial ratio methodology, starting with the cost of goods sold from Note 7 of the financial statement, is supported by substantial evidence.

---

[5]  This segregation is necessary to compute the factory overhead ratio.

B.     Commerce Reasonably Determined That Ancientree's Assertion of Commerce's Established Practice In Calculating Financial Ratios Is Not Substantiated By The Record

In the remand redetermination, Commerce also explained that Ancientree's argument that Commerce failed to follow its usual practice for calculating Sigstrat's financial ratios is flawed and unsubstantiated by the record. *Remand Redetermination* at 17. None of the cases that Ancientree cites include the necessary information to determine Commerce's "usual practice."

Ancientree relied upon *MLWF from China 2013-2014*, *MLWF from China 2014-2015*, *MLWF from China 2015-2016*, and *Plywood from China*[6] to support its arguments. None of these cases, however, provide sufficient information to demonstrate that Commerce has a *usual* practice. Outside of *MLWF from China 2013-2014*, and the *MLWF from China 2016-2017* SV Memorandum placed on the record, there is no public information in the cited decisions, or information on this record, that can speak to the specifics of the financial ratio calculations from those cases. Any information to the contrary would need to be placed on the record by Ancientree because while "Commerce must consider all information timely filed by interested parties, 'the burden of creating an adequate record lies with {interested parties} and not with Commerce.'" *See QVD Food Co., Ltd. v. United States*, 658 F.3d 1318, 1324 (Fed. Cir. 2011)

---

[6] *MLWF from China 2016-2017, Multilayered Wood Flooring from the People's Republic of China: Final Results of Antidumping Administrative Review; 2013-2014*, 81 Fed. Reg. 46,899 (Dep't of Commerce July 19, 2016) (*MLWF from China 2013-2014*); *Multilayered Wood Flooring from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Final Partial Rescission of Antidumping Duty Administrative Review; 2014-2015*, 82 Fed. Reg. 25,766 (Dep't of Commerce June 5, 2017) (*MLWF from China 2014-2015*), *Multilayered Wood Flooring from the People's Republic of China: Final Results of Antidumping Duty Administrative Review, Final Determination of No Shipments, and Partial Recission; 2015-2016*, 83 Fed. Reg. 35,461 (Dep't of Commerce July 26, 2018) (*MLWF from China 2015-2016*), and *Certain Hardwood Plywood Products from the People's Republic of China: Final Determination of Sales at Less Than Fair Value, and Final Affirmative Determination of Critical Circumstances, in Part*, 82 Fed. Reg. 53,460 (Dep't of Commerce Nov. 16, 2017) (*Plywood from China*)).

(citing *Tianjin Machinery Import & Export. Corp. v. United States*, 806 F. Supp. 1008, 1015 (Ct. Int'l Trade 1992).  Thus, the burden lies with Ancientree to provide the necessary information, which it failed to do here.

The only evidence Ancientree provided in support of its argument is the preliminary *MLWF from China 2016-2017* SV Memorandum.  *See* Ancientree's Admin. Case Br. at 14 (P.R. 1511) ("In each instance, {Commerce} has used significantly more delineated line items in Sigstrat's financial statement. *See, e.g.*, Ancientree's Rebuttal SVs at Exhibit 2 (submitting the 2017 Sigstrat ratio calculation relied upon in *Multilayered Wood Flooring from China*); *see also* Ancientree Cmts. at 6. This memorandum, however, does not include significant information that could provide context regarding Commerce's *MLWF from China 2016-2017* calculations. *Remand Redetermination* at 20. Notably, Ancientree failed to include on this record an English translation of the 2016-2017 financial statements, or the accompanying notes. *See QVD Food*, 658 F. 3d at 1324 (placing the burden of creating an adequate record on interested parties). Moreover, *MLWF from China 2016-2017* addressed a different product, different time period, and different interested parties who may have suggested different financial ratio calculations. Notably, Commerce may make adjustments unique to particular proceedings that may not be appropriate in other cases, or there may be notes and translations to the financial statements that are different from the ones presented in this case. Without the 2016-2017 Sigstrat financial statements and the accompanying English translations that were on the *MLWF from China 2016-2017* record, Commerce cannot determine the rationale for the methodology used in that case. *Remand Redetermination* at 20.  Nor can Commerce adequately explain why that methodology differed from the methodology used in this investigation.  *Id.*

Ancientree lists past proceedings where Commerce has calculated financial ratios using Sigstrat's financial statements, but, points to no evidence on this record that supports its assertions that Commerce should have used the same calculations here. Further, neither the *Federal Register* notices for most of the cited cases, nor the accompanying IDMs describe the specific calculations Commerce performed. Ancientree Admin. Case br. at 14; *see also* Ancientree Cmt. At 6. Commerce cannot assume that the other cases Ancientree referenced in its administrative case brief use precisely the same methodology employed in the *MLWF from China 2016-2017* SV Memorandum. *Remand Redetermination* at 18. Only one of the four other cases that Ancientree references in its case brief, *MLWF from China 2013-2014*, publicly discussed Commerce's financial ratio calculation methodology. In that case, Commerce calculated the financial ratios using the cost of goods sold/Note 4 from Sigstrat's financial statements[7] and explained that using cost of goods sold was preferable to using the profit and loss statement (*i.e.*, income statement) for calculating the financial ratios. *See MLWF from China 2013-2014* IDM at 27-28. The surrogate financial ratio calculations in this investigation are consistent with past financial ratio calculations using Sigstrat's financial statements (*MLWF from China 2013-2014*), albeit not the one that served as the basis for Ancientree's proposed calculation in this review (*MLWF from China 2016-2017*).

Commerce therefore determined that the record does not support Ancientree's assertion that Commerce has always calculated the financial ratios a certain way. Instead, by using the cost of goods sold, and not the income statement line items as Ancientree suggested, Commerce

---

[7] Commerce stated that parties were referencing Note 4 and Note 7 interchangeably in that case.

used the methodology that yielded the most precise ratios possible, given the information on this record. *Remand Redetermination* at 20.

III.   <u>Ancientree's Additional Arguments Do Not Undermine Commerce's Determination</u>

The remainder of Ancientree's arguments are no more than disagreement with Commerce's determination and ignore Commerce's reasoned explanations.  Ancientree Cmts. at 3-8. This disagreement is insufficient because "the {C}ourt may not substitute its judgment for that of the {agency} when the choice is between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*." *Goldlink Indus. Co. v. United States*, 431 F. Supp. 2d 1323, 1326 (Ct. Int'l Trade 2006) (citation and quotation marks omitted).  "Commerce's findings 'may still be supported by substantial evidence even if two inconsistent conclusions can be drawn from the evidence.'" *Sunpreme Inc. v. United States*, 946 F.3d 1300, 1308-09 (Fed. Cir. 2020) (citation omitted).  Ancientree's arguments are unavailing, as we discuss below.

First, Ancientree alleges that Commerce did not follow its "normal and logical calculation methodology {of starting} with the {income statement} in its ratio calculations." Ancientree Cmts. at 2.  No record evidence supports Ancientree's claims of this "normal and logical calculation methodology," nor that this methodology is Commerce's typical practice. Ancientree cited only one case, *MLWF from China 2016-2017*, which nominally supports Ancientree's argument that Commerce has a "normal" financial ratio calculation methodology— starting with several line items from Sigstrat's income statement.  One case, however, does not by itself constitute a "normal practice," particularly where the record contains limited information of the details of that case.  *Remand Redetermination* at 24; *see also CP Kelco US, Inc. v. United States*, Ct. No. 13-00288, 2015 WL 1544714 at *10 (Ct. Int'l Trade 2015) (explaining that "citing isolated investigations does not prove the existence of past practices; it

just proves that Commerce thought differently on different facts at different times."). Ancientree also does not address two case examples Commerce cited. Remand Redetermination (citing *MLWF from China 2013-2014*, IDM at 27-28, and *Nantong*, 415 F. Supp. 3d at 1355). In both examples, Commerce—consistent with its preference—used the cost of goods sold in the notes of the financial statements as the basis for calculating surrogate financial ratios, and *not* line items from the income statement, as Ancientree incorrectly asserts. *Id.* Notably, Ancientree fails to address those examples, explain why the methodologies used in those cases are not part of Commerce's "normal" practice and/or are less preferable to the methodology used in *MLWF from China 2016-2017*, or explain why this Court's holding in *Nantong* is inapplicable here.

Further, Ancientree's assertion ignores the reality of Commerce's proceedings. While Commerce has a preference for starting its calculation with the cost of goods sold, Commerce bases each financial ratio calculation on record evidence. There is no "one-size-fits-all," or "normal," financial ratio calculation methodology, which can vary based on each case. *Remand Redetermination* at 24-25. Moreover, because Commerce's review is limited to the record before it, and because the information provided to Commerce differs in each case, Commerce's financial ratio methodology may vary across proceedings. That outcome is reasonable because "each administrative review is a separate exercise of Commerce's authority that allows for different conclusions based on different facts in the record." *Qingdao Sea-line Trading Co. v. United States*, 766 F.3d 1378, 1387 (Fed. Cir. 2014). For example, the financial ratio calculation methodology appears to differ even within segments of the same proceeding, as can be seen from *MLWF from China LTFV Investigation*, *MLWF from China 2013-2014*, and *MLWF from China 2016-2017*. *See, e.g.*, *MLWF from China LTFV Investigation,* IDM at Comment 2 *cf. MLWF from China 2013-2014,* IDM at Comment 5; *cf*. Ancientree Rebuttal SV Comments at Exhibit

SVR-2 (citing *MLWF from China 2016-2017* Preliminary SV Memorandum) *cf*. *MLWF from China 2017-2018* at Comment 4. Ultimately, while Commerce strives for consistency, Commerce's overriding goal is accuracy. *See Hebei Metals & Materials Imp. & Exp. Corp. v. United States*, 366 F. Supp. 2d 1264, 1274 (2005). Consistent with that goal, Commerce explained why using its preferred methodology provided a more accurate surrogate financial ratio calculation. *Remand Redetermination* at 24. Importantly, Commerce may always revise or update its methodology "for both increased accuracy and ease of use." *Stanley Works (Langfang) Fastening Sys. Co. v. United States*, Slip op. 2018-134 at *18 (Oct. 15, 2018).

Second, Ancientree argues that Commerce's surrogate financial ratio calculation does not "follow the flow of the financial statement" and that it is "illogical" to start with the notes. Ancientree Cmts. at 2-3. This argument misconstrues Commerce's examination of the financial statement, and the very purpose of the notes. The notes provide a detailed breakdown and explanation of the individual lines within the income statement and the balance sheet. So while the line items from Sigstrat's income statement contain the same, higher level information as the notes, the notes include a detailed breakdown of the various costs included within those line items. *See* AKCA's SV Comments at Exhibit 10B. Although Note 4 is found several pages following the income statement, the information in Note 4 nevertheless expands on the line item information. Thus, when using the notes, the order or "the flow of the statement," does not matter. *Remand Redetermination* at 34-35.

As Commerce explained in *MLWF from China 2013-2014*, Commerce "typically uses information derived from the income statement, balance sheet, *and notes* in order to perform its surrogate financial ratio calculations." *See MLWF from China 2013-2014*; IDM at Comment 5 (emphasis added). This Court has sustained previously Commerce's use of the notes to the

financial statement. *See Nantong*, 415 F. Supp. 3d at 1355. Ultimately, in a situation such as this, where the notes to the financial statements contain the most precise information, and therefore yield the most accurate financial ratio calculations, Commerce would act unreasonably by *not* using the notes. *Remand Redetermination* at 34.

Ancientree quotes the *MLWF from China LTFV Investigation* IDM, where Commerce appears to have used the cost of goods sold as a basis for calculating the financial ratios. Ancientree Cmts. at 3. Specifically, Ancientree highlights the statement that, "because {Commerce} cannot go behind line items in the surrogate financial statements, {Commerce} bases its determinations on the information contained within the financial statements themselves." *Final Determination of Sales at Less Than Fair Value*, 76 Fed. Reg. 64,318 (Dep't of Commerce Oct. 18, 2011), and accompanying IDM at Comment 2. Ancientree uses this language to suggest that the notes are not part of the financial statements and Commerce should disregard them when calculating the financial ratios. Ancientree Cmts. at 3. Commerce's statement was in response to a suggestion that it reclassify certain information reported in the financial statements for the financial ratio calculations. *See MLWF from China LTFV Investigation* IDM at 17. The notes are part of the financial statements, and explain the information reported in the income statement and balance sheet at a greater level of detail. The statement Commerce made in *MLWF from China LTFV Investigation* provides no basis for Commerce to ignore the notes, which are a crucial part of the financial statement.

Third, Ancientree claims that starting the financial ratio calculations with several line items from the income statement is more accurate than starting with the cost of goods sold from the notes of the financial statements. Ancientree Cmts. at 4-5. Using more line items does not always result in a more accurate calculation. The cost of goods sold, by definition, includes

direct materials, direct labor, and production overhead costs. *Remand Redetermination* at 35. Using the cost of goods sold as reported in the notes, then adjusting it by the change in inventory to arrive at cost of manufacturing, and finally deducting production overhead costs, ensures that the materials, labor, and energy denominator only includes the raw material and labor costs directly related to manufacturing. *See* Final SV Memorandum at Attachment 12. Ancientree does not comment on the accuracy of using cost of goods sold or that calculation, but only reiterates that the calculation in the final determination "results in no separate breakouts for raw materials or labor." Ancientree Cmts. at 5. Ancientree's argument is seemingly based on its belief that more line items result in greater precision. But this is incorrect. There is no need to include several line items just because they are labeled "labor" or "materials," when there is a single line item in the notes titled "Cost of goods sold and services rendered" that includes the complete relevant costs to this calculation. *See* AKCA's SV Comments at Exhibit 10B at Notes 4 and 7; *Thai Pineapple Pub. Co. v. United States*, 187 F.3d 1362, 1365 (Fed. Cir. 1999) (holding that Commerce's determinations that turn on complex economic and accounting inquiries are entitled to deference).

Fourth, Commerce's manufacturing overhead ratio calculation does not rest upon unsupported assumptions. *See* Ancientree Cmts. 4-5. Sigstrat's financial statements break down cost of goods sold into two components: (1) expenditures on basic activities; and (2) "Production overheads" (Note 4), which is also referred to as "Indirect Production Expenses" (Note 7). *See* AKCA's SV Comments at Exhibit 10B. Based on the use of these terms, Commerce assumed that the production overhead figure represented all manufacturing costs other than expenditures on basic activities. *Remand Redetermination* at 37-38 ("Production overheads" is the same as manufacturing overhead costs). Manufacturing overhead is the sum of

the indirect costs incurred while manufacturing a product. This cost usually includes: depreciation of equipment salaried factory personnel, electricity used to operate the equipment, *etc*. *Id*. Therefore, for the manufacturing overhead ratio, Commerce classified "the 'production overhead' component of {cost of goods sold} (less energy) as the numerator and the basic activities component (direct materials and direct labor), plus energy, as {manufacturing, labor and energy} in the denominator." *Remand Redetermination* at 38.

The conclusion that the total amount of "outside expenses (with energy and water)" is part of the production overhead, or indirect production, expenses (and therefore, capable of being deducted from production overhead) is reasonable for two reasons. First, by definition, production overhead includes energy expenses, and the record lacks any indication that these energy expenses were part of the expenditures on the basic activity component of the cost of goods sold, rather than part of the "production overhead" component. *Remand Redetermination* at 38. Second, assuming the total amount of "outside expenses (with energy and water)" is all part of production overhead is a conservative assumption. *Id*. The alternative would have been to assume that a certain unknown amount of electricity should have been captured elsewhere in the financial ratio calculations. For example, some energy or water could have related to the sales office and could have increased the numerator of the selling, general, and administrative expenses ratio. In the hypothetical case where Commerce reclassified a certain portion of energy costs from "outside expenses (with energy and water)" to another ratio, that same amount of energy would, as a result, not have been added to the denominator, meaning the denominator would have been lower. This would also have resulted in a higher manufacturing overhead ratio. *Remand Redetermination* at 38. Accordingly, the definition of production overhead, the lack of record information challenging this approach, and the fact that a different assumption on the

23

amount of energy expenses would be less conservative, all support the reasonableness of Commerce's treatment of energy expenses as part of the manufacturing, labor and energy denominator in the final financial ratio calculations. *Id*.

Finally, as we explained above, Commerce has not always started with the income statement line items. Ancientree's assertion regarding the calculation of factory overhead is not supported by the proceeding it cites. Ancientree Cmts. at 6-7 (citing *Multilayered Wood Flooring Final Results of Antidumping Duty Administrative Review and New Shipper Review and Final Determination of No Shipments; 2017-2018*, 85 Fed. Reg. 78,118 (Dep't of Commerce December 3, 2020) and accompanying IDM at Comment 1) (*MLWF from China 2017-2018*). Ancientree claims that, in *MLWF from China 2017-2018*, Commerce found the petitioner's suggested manufacturing overhead ratio calculation methodology to be distortive, and that the proposed methodology was the same as AKCA's suggested surrogate financial ratio calculation methodology. Commerce did not adopt AKCA's suggested surrogate financial ratio methodology in the final determination. *Remand Redetermination* at 28-29. Ancientree's argument that Commerce has found "petitioner's methodology" to be distortive in other cases therefore does not call into question the reasonableness of the methodology Commerce used in this case. Ancientree Cmts. at 67; *see also Remand Redetermination* at 29.

Ultimately, Ancientree ignores Commerce's explanations that it derived its methodology based on relevant record information. Ancientree further ignores the fact that Commerce reasonably concluded from that information that starting its calculation with the cost of goods sold, found in the notes of the financial statements, allowed Commerce to calculate the financial ratios as accurately as possible. Therefore, Commerce has "examine{d} the relevant data and articulate{d} a satisfactory explanation for its action." *Motor Vehicle Mfrs. Ass'n v. State Farm*,

463 U.S. 29, 43 (1983).  Ancientree has failed to demonstrate that Commerce's determination

lacks "such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion."  *CP Kelco U.S., Inc. v. United States*, 949 F.3d 1348, 1356 (Fed. Cir. 2020).

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court sustain Commerce's remand

redetermination and enter final judgment in favor of the United States.

Respectfully Submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Tara K. Hogan
TARA K. HOGAN
Assistant Director

/s/ Ioana Cristei
IOANA CRISTEI
Trial Attorney
Commercial Litigation Branch
U.S. Department of Justice
Civil Division
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel: (202) 305-0001
Fax: (202) 305-2062
Email: Ioana.Cristei@usdoj.gov

OF COUNSEL:
SAVANNAH ROSE MAXWELL
Attorney
Department of Commerce
Office of Chief Counsel for Trade
Enforcement & Compliance
1401 Constitution Avenue, NW
Washington, DC 20005

December 21, 2021                              *Attorneys for Defendant United States*

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that the foregoing brief complies with the word-count limitation, in that it contains 5,516 words according to the word-count function of the word-processing software used to prepare the memorandum, including text, footnotes, and headings.

<u>/s/ Ioana Cristei</u>