Slip Op. 22-24

## UNITED STATES COURT OF INTERNATIONAL TRADE

THE ANCIENTREE CABINET CO., LTD.,

Plaintiff,

CABINETS TO GO, LLC,

Plaintiff-Intervenor,

v.

UNITED STATES,

Defendant,

and

AMERICAN KITCHEN CABINET ALLIANCE,

Defendant-Intervenor.

Before: Gary S. Katzmann, Judge
Court No. 20-00114

## OPINION

[The court sustains Commerce's Final Results of Redetermination.]

Dated: <u>March 21, 2022</u>

<u>Gregory S. Menegaz</u>, <u>J. Kevin Horgan</u> and <u>Alexandra H. Salzman</u>,DeKieffer & Horgan, PLLC, of Washington, D.C., for Plaintiff The Ancientree Cabinet Co., Ltd.

<u>Mark R. Ludwikowski</u>, Clark Hill PLC, of Washington, D.C., for Plaintiff-Intervenor Cabinets To Go, LLC.

<u>Iona Cristei</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for Defendant United States.  With her on the brief were <u>Brian M. Boynton</u>, Acting Assistant Attorney General, <u>Patricia M. McCarthy</u>, Director, and <u>Tara K. Hogan</u>, Assistant Director.  Of Counsel <u>Savannah Rose Maxwell</u>, Attorney, Office of Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce.

<u>Luke A. Meisner</u> and <u>Roger B. Shagrin</u>, Schagrin Associates, of Washington, D.C., for Defendant-Intervenor American Kitchen Cabinet Alliance.

Katzmann, Judge:  The Ancientree Cabinet Co., Ltd. ("Plaintiff" or "Ancientree") brought this action to contest the U.S. Department of Commerce's ("Commerce") final affirmative antidumping duty ("AD") determination in its investigation of wooden cabinets and vanities from the People's Republic of China ("China").  Ancientree challenged Commerce's determination, alleging that its selection of Romania as primary surrogate country and subsequent analysis of surrogate factors of production were unsupported by substantial evidence, and that its calculation of financial ratios was arbitrary and capricious.  Ancientree Cabinet Co., Ltd. v. United States, 45 CIT __, __, 532 F. Supp. 3d 1241, 1247 (2021).  The court determined that, while Commerce's surrogate country selection and surrogate FOP analysis were adequately supported by the record, its financial ratio calculations required remand for further explanation.  Id. at 1265.  Commerce having now provided additional explanation of its calculations, the court concludes that the financial ratio calculations are supported by substantial evidence and sustains Commerce's determination on remand.

**BACKGROUND**

### I.     *Legal and Factual Background*

The court set out the relevant legal and factual background of the proceedings in further detail in its previous opinion, Ancientree Cabinet Co., Ltd. v. United States, 532 Supp. 3d 1241 ("Ancientree I").  Information relevant to the instant opinion is set forth below.

Where, as here, the merchandise under investigation is exported from a non-market economy ("NME"),[1] Commerce determines the normal value of the subject merchandise in large

---

[1]  See AD Investigation of Certain Aluminum Foil from the People's Republic of China: Affirmative Prelim. Determination of Sales at Less-Than-Fair Value and Postponement of Final Determination, 82 Fed. Reg. 50,858, 50,861 (Dep't Commerce Nov. 2, 2017) (finding that China is a non-market economy).

part through valuation of the manufacturer's factors of production ("FOPs").   19 U.S.C. § 1677b(c)(1).  FOPs are the factors "utilized in producing merchandise," and include the "hours of labor required, . . . quantities of raw materials employed, . . . amounts of energy and other utilities consumed, and . . . representative capital costs, including depreciation," among other factors.  19 U.S.C. § 1677b(c)(1), (3)(A)–(D).

Commerce is required to value the FOPs reported by NME manufacturers on the basis of "the best available information regarding the values of such factors in a market economy country or countries" it identifies.  19 U.S.C. § 1677b(c)(1)(B).  These countries -- commonly known as "surrogate countries" -- must, to the extent possible, display "a level of economic development comparable to that of the [NME] country" as well as "significant produc[tion] of comparable merchandise."  19 U.S.C. § 1677b(c)(4).  Once the surrogate country or countries are selected, Commerce generates "surrogate financial ratios from 'the financial statements of . . . manufacturing firms'" within the primary surrogate country, relying on those "select financial statements" which provide the "best available information."  Ancientree I, 532 F. Supp. 3d at 1248 (quoting CP Kelco US, Inc. v. United States, 40 CIT __, __, 2016 WL 1403657 at *1 (2016)).

The investigation of wooden cabinets and vanities from China currently before the court was initiated by Commerce on March 26, 2019.  See Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Initiation of Less-Than-Fair-Value Investigation, 84 Fed. Reg. 12,587 (Dep't Commerce Apr. 2, 2019) (initiating AD investigation for the period of investigation of July 1, 2018 to December 31, 2018).  Commerce selected Ancientree as a mandatory respondent to the investigation, see Respondent Selection Mem. (Dep't Commerce June 4, 2019), P.R. 838, and accordingly requested that Ancientree report the FOPs consumed to produce its wooden cabinets, see AD Questionnaire (Dep't Commerce Apr. 25,

2019), P.R. 842.  Ancientree, in response, "reported various FOPs, including birch and poplar sawnwood, particleboard, medium density fibreboard . . . and paint." Ancientree I, 532 F. Supp. 3d at 1249–50.

At around the same time, Commerce's Office of Policy ("OP") determined, based on data from the World Development Report, that Romania, Malaysia, Russia, Mexico, Brazil, and Kazakhstan were all countries at a comparable level of economic development to China, and requested interested party comments on potential surrogates. See Request for Economic Development, Surrogate Country and Surrogate Value Cmts. and Information at 1–2, Attach. (Dep't Commerce June 17, 2019), P.R. 850.  Defendant-Intervenor American Kitchen Cabinet Alliance ("AKC Alliance") recommended Romania as the primary surrogate country, while Ancientree recommended Malaysia.  See Petitioner, Initial Surrogate Value Cmts. (Aug. 7, 2019), P.R. 956–61 ("AKC Alliance Prelim. SV Comments"); Ancientree, Prelim. Surrogate Value Submission (Aug. 7, 2019), P.R. 952–53 ("Ancientree Prelim. SV Comments").

On October 9, 2019, after consideration of the various submissions, Commerce issued its preliminary determination. See Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Prelim. Affirmative Determ. of Sales at Less than Fair Value, Postponement of Final Determ. and Extension of Provisional Measures, 84 Fed. Reg. 54,106 (Dep't Commerce Oct. 9, 2019) ("Preliminary Determination"), and accompanying Preliminary Decision Memorandum (Oct. 9, 2019) P.R. 1407 ("PDM"), as corrected by Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Prelim. Affirmative Determ. of Sales at Less than Fair Value, Postponement of Final Determ. and Extension of Provisional Measures, 84 Fed. Reg. 56,420 (Dep't Commerce Oct. 22, 2019).  In the Preliminary Determination Commerce selected Romania as the primary surrogate country, finding that its level

of economic development was comparable to China's, that it was a significant producer of comparable merchandise, and its producers could supply reliable surrogate value data. See PDM at 14. Commerce accordingly preliminarily valued Ancientree's FOPs on the basis of the Romanian surrogate data, and calculated surrogate financial ratios from the financial statements of Romanian manufacturer S.C. Sigstrat S.A. ("Sigstrat"). Id. at 13–14; Prelim. Surrogate Value Memo (Dep't Commerce Oct. 3, 2019), P.R. 1411–12 ("Prelim. SV Memo").

On February 28, 2020, Commerce issued its final determination, in which it concluded that wooden cabinets and vanities from China were being sold at less than fair value in the United States and calculated the applicable AD rate. See Wooden Cabinets and Vanities and Components Thereof from the People's Republic of China: Final Affirmative Determ. of Sales at Less Than Fair Value, 85 Fed. Reg. 11,953 (Dep't Commerce Feb. 28, 2020), as corrected by Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Corrected Notice of Final Affirmative Determ. of Sales at Less Than Fair Value, 85 Fed. Reg. 17,855 (Dep't Commerce Mar. 31, 2020) ("Final Determination"), and accompanying Issues and Decision Memorandum (Feb. 21, 2020), P.R. 1554 ("IDM"). In its Final Determination, Commerce largely maintained the surrogate value analysis from the Preliminary Determination, including both its selection of Romania as primary surrogate country and its calculation of surrogate financial ratios from Sigstrat's financial statements. IDM at 29–40. Commerce issued a final AD order on April 21, 2020. Wooden Cabinets and Vanities and Components Thereof From the People's Republic of China: Antidumping Duty Order, 85 Fed. Reg. 22,126 (Dep't Commerce Apr. 21, 2020) ("Order"). This appeal followed.

## II.     Procedural History

Ancientree initiated this challenge to Commerce's <u>Final Determination</u> on May 21, 2020.

Summons, ECF No. 1; Compl., ECF No. 6. AKC Alliance joined the litigation as Defendant-

Intervenor on June 17, 2020.  Consent Mot. to Intervene as Def.-Inter., ECF No. 10; Order

Granting Mot. to Intervene, ECF No. 14.  Cabinets To Go, LLC then joined this litigation as

Plaintiff-Intervenor on June 19, 2020.  Consent Mot. to Intervene as Pl.-Inter., ECF No. 15; Order

Granting Mot. to Intervene, ECF No. 19.  After consideration of the motions filed by Ancientree

and Cabinets To Go, LLC for judgment on the agency record, and the opposition of the United

States ("the Government") and AKC Alliance, the court sustained the <u>Final Determination</u> with

respect to Commerce's selection of Romania as primary surrogate country and its selection of

surrogate values, but remanded for further explanation Commerce's calculation of financial ratios.

<u>Ancientree I</u>, 532 F. Supp. 3d at 1265–66.  In particular, the court determined that Commerce

failed to adequately address Ancientree's argument that the financial ratio calculations "differed

from Commerce's past calculations of financial ratios using Sigstrat's financial statements" by

employing substantially fewer line items.  <u>Id.</u> at 1260.

On October 12, 2021, Commerce filed its remand results.  Final Results of Redeterm.

Pursuant to Court Remand, ECF No. 61-1 ("<u>Remand Results</u>").  Ancientree and Defendant-

Intervenor AKC Alliance each filed comments on the <u>Remand Results</u> in early November, and

both AKC Alliance and the Government replied to Ancientree's comments in December of 2021.

Def.-Inter.'s Cmts. on the U.S. Dep't of Commerce's Final Remand Redeterm., Nov. 10, 2021,

ECF No. 66 ("Def-Inter.'s Br."); Pl.'s Cmts. in Opp. to Remand Redeterm., Nov. 12, 2021, ECF

No. 67 ("Pl.'s Br."); Def.-Inter.'s Reply to Pl.'s Cmts. on the U.S. Dep't of Commerce's Final

Remand Redeterm., Dec. 21, 2021, ECF No. 70 ("Def.-Inter.'s Reply"); Def.'s Resp. to Cmts. on

Remand Redeterm., Dec. 21, 2021, ECF No. 71 ("Def.'s Reply").

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).  The standard

of review in this action is set forth in 19 U.S.C. § 1516a(b)(1)(B)(i): "[t]he court shall hold

unlawful any determination, finding or conclusion found . . . to be unsupported by substantial

evidence on the record, or otherwise not in accordance with law."  A determination by Commerce

"is supported by substantial evidence if a reasonable mind might accept the evidence as sufficient

to support the finding."  Maverick Tube Corp. v. United States, 857 F.3d 1353, 1359 (Fed. Cir.

2017) (citing Consol. Edison Co. of N.Y. v. NLRB, 305 U.S. 197, 229 (1938)). The court also

reviews the determinations pursuant to remand "for compliance with the court's remand order."

Beijing Tianhai Indus. Co. v. United States, 39 CIT __, __, 106 F. Supp. 3d 1342, 1346 (2015)

(quoting Yantai Xinke Steel Structure Co. v. United States, 38 CIT __, __, 2014 WL 1387529 at

*2 (2014)).

## DISCUSSION

On remand, Commerce continues to find that by beginning its financial ratio calculations

with the cost of goods sold, "and not the income statement line items as Ancientree suggested, [it]

used the methodology which yielded the most precise ratios possible, given the information present

on this record."  Remand Results at 20.  In compliance with the court's remand instructions,

Commerce responds directly to Ancientree's allegations that "Commerce's preliminary financial

ratio calculation differed from Commerce's past calculations of financial ratios using Sigstrat's

financial statements" and was therefore arbitrary and capricious.  Ancientree I, 532 F. Supp. 3d at

1260.  Commerce explains that while both Ancientree and AKC Alliance proposed methodologies

for calculating financial ratios from Sigstrat's financial statements, Ancientree's started with line items from the income statement -- i.e., "costs identified by type of transaction" -- and AKC Alliance's started with Note 7 to the financial statements, which "identifies costs by function." Remand Results at 10.  Commerce adopted the latter methodology in the Final Determination, and adopts it again on remand, because starting with costs by function "allows Commerce to properly classify the costs as either manufacturing costs, operating costs . . . or financial expenses."  Id. This in turn allows Commerce to "accurately calculate the cost of manufacturing ('COM')" and to "segregate the COM between direct manufacturing costs and factory overhead" by comparing the change in finished inventory and the cost of goods sold ("COGS").  Id. at 10–11.  If Commerce were instead to rely on Sigstrat's income statement line-items identified by type of transaction, it would need to make additional assumptions to calculate a financial ratio, as it "cannot go behind surrogate financial statements to determine precisely what each item includes or to what activity it relates" where the data does not itself identify the function of a given expense.[2]  Id. at 16.  On this basis, Commerce concludes that calculating financial ratios from Note 7's costs-by-function accounting (including COGS) satisfies 19 U.S.C. § 1677b(c)(1)(B)'s requirement that "the valuation of the factors of production [in an NME] shall be based on the best available information regarding the values of such factors."

       With respect to Ancientree's argument that, in any case, Commerce deviates from past practice by relying on Note 7's costs-by-function data over the line items identified by Ancientree,

_____

[2] Commerce's practice of "refraining from 'peeking behind' the underlying data of surrogate financial statements" is longstanding, and was established in light of Commerce's inability to either "compel responses from third parties" or "ensure the timeliness or accuracy" of such responses.  CS Wind Vietnam Co., Ltd. v. United States, 41 CIT __, __, 219 F. Supp. 3d 1273, 1279 (2017) (citation omitted), aff'd 721 Fed. Appx. 993 (Fed. Cir. 2018) (per curiam).  Although not challenged in the present case, the court has previously found that that the maintenance of this policy is not an abuse of Commerce's discretion, and continues to do so here.  Id. at 1284.

Commerce explains that in fact, it "prefers to use financial statements that list costs by function rather than type of transaction, because expenses such as labor can relate to manufacturing, administration, and selling" and further, "its preference is to use financial statements that include a line item for the costs of goods sold." Id. at 11–12 (quoting Nantong Uniphos Chems. Co. v. United States, 43 CIT __, __, 415 F. Supp. 3d 1345, 1354–55 (2019)). Commerce further notes that while it did not rely on COGS (and costs by function generally) to calculate surrogate financial ratios from Sigstrat's financial statements in Multilayered Wood Flooring from the People's Republic of China: Final Results of the Antidumping Duty Admin. Rev. and Final Determ. of No Shipments: 2016–2017, 84 Fed. Reg. 38,002 (Dep't Commerce Aug. 5, 2019) ("MLWF 2016–2017") -- a prior investigation highlighted by Ancientree -- it did rely on COGS and costs by function in Multilayered Wood Flooring from the People's Republic of China: Final Results of Antidumping Administrative Review; 2013–2014, 81 Fed. Reg. 46,899 (Dep't Commerce July 19, 2016) ("MLWF 2013–2014"). Id. at 17–18. Indeed, in the latter review, Commerce explains that it calculated financial ratios from the same Note 7 explanation of costs employed in the instant investigation. Id. at 18 (quoting MLWF 2013–2014 and accompanying IDM at 27–28). Although Commerce acknowledges that it employed Ancientree's methodology in MLWF 2016–2017, it notes that "the adjustments made in each segment may not be appropriate in other segments, let alone other proceedings" and declines to adopt the same methodology in the present case given the information on the record. Id. at 20.

In response, Ancientree disputes Commerce's assertion that its selected methodology is more accurate than the line-item analysis Ancientree proposed. Pl.'s Br. at 1. Ancientree again argues that beginning with Note 7's costs-by-function breakdown is contrary to Commerce's "normal and logical calculation methodology," and that calculation of the surrogate financial ratios

must begin with the income statement's line-item classifications.  Id. at 2.  Disputing Commerce's assertion that an analysis based on COGS more accurately apportions costs that, when viewed on a transactional basis, commingle manufacturing, administration, and selling expenses, Ancientree argues that Commerce's failure to consider specific transactional line items (including "raw materials and consumable expenses" and "personnel expenditure") reduces the accuracy of the calculated ratio.  Id. at 5.  Ancientree reiterates its argument that Commerce "uniquely" relies on the costs-by-function breakdown set out in Note 7 in this investigation -- rather than basing its ratio calculation on the income statement -- and fails to "adequately or reasonably explain[] why it calculated the ratios differently in this investigation or how accuracy has been increased by this change."  Id. at 6–7.  Finally, Ancientree contends that where Commerce does consider line items from the income statement, as it does "outside expenses (with energy and water)," its adjustments to and assignment of those costs "amount[s] to pure speculation" and the resultant ratio cannot be supported by substantial evidence.[3]  Id. at 5.

Ancientree's arguments are opposed by the Government and AKC Alliance, each of whom support Commerce's remand results.  Both the Government and AKC Alliance argue that Commerce's financial ratio calculation methodology is more accurate than Ancientree's proposed alternative, and is supported by substantial evidence.  Def.'s Reply at 11–14; Def.-Inter.'s Br. at 2.  AKC Alliance further notes that while a minimum level of detail is required for Commerce's analysis to be accurate, once the accuracy requirement is satisfied, "there is no general preference to use as many line items as possible."  Def.-Inter.'s Reply at 5–6.  The Government and AKC

---

[3] Ancientree also alleges that Commerce's analysis runs "contrary to the flow" of Sigstrat's financial statements.  Pl.'s Br. at 2.  As Ancientree fails to provide any evidence for its apparent contention that reading a statement "out of order" renders its contents unreliable, the court declines to address this argument further.

Alliance also contend that Commerce reasonably determined it was not departing from past practice by basing its ratio calculation on Note 7 rather than the income statement.  Def.'s Reply at 15–18; Def.-Inter.'s Reply at 2–3, 6.  Both parties note Commerce's stated preference for using COGS as the starting point for a valuation of manufacturing overhead, profits, and selling, general and administrative expenses.  Def.'s Reply at 12; Def.-Inter.'s Reply at 3.  They each additionally argue that the "past practice" identified by Ancientree is unsupported by evidence on the record and in any case fails to compel Commerce to rely on the income statement in the present case.  Def.'s Reply at 15–16; Def.-Inter.'s Reply at 6–7.  Finally, the Government contests Ancientree's assertion that Commerce's analysis of "outside expenses (with energy and water)" rests on mere speculation; arguing instead that Commerce's approach to adjustment and allocation was reasoned and conservative.  Def.'s Reply at 23–24.

The court concludes that Commerce adequately explained its methodology on remand, and accordingly upholds Commerce's calculated financial ratios.  First, with respect to the methodology itself, the court holds that Commerce's reliance on COGS -- and on Note 7 generally -- as the starting point for its surrogate ratio analysis is supported by substantial evidence. Commerce explains on remand that, because the financial ratios rely upon the total direct manufacturing costs of the surrogate producer, "selecting the best record information for the total direct manufacturing costs used in the financial ratio calculations is integral to the accuracy of Commerce's calculations."  Remand Results at 11.  As the court has previously noted, "[b]y definition, the cost of goods sold . . . captures all of the costs of manufacture."  Nantong, 415 F. Supp. 3d at 1355 (citation omitted).  It follows that the entirety of the "direct and indirect manufacturing costs necessary for the financial ratio calculations" are included within the COGS. Remand Results at 13.  Commerce's decision to begin with COGS and perform adjustments based

on change in inventory and production overhead costs (to calculate cost of manufacturing) and on

energy and direct materials/labor costs (to calculate manufacturing overhead) thus reflects a

reasonable methodological approach to calculating the applicable financial ratios.  Id. at 35–36;

38–39.  To require Commerce to rely instead on the line-item costs which make up COGS would

at best entail needless summation, and at worst (where, as here, those line item costs fail to

delineate between manufacturing, administrative, and selling expenses) require substantial

additional labor to disaggregate costs into their component functions, if accurate disaggregation is

possible at all.  As Ancientree provides no evidence that the COGS relied upon by Commerce is

itself inaccurate, its argument that a ratio calculation based on the Sigstrat income statement is

necessarily superior indeed seems to "conflate[] the use of several line items with accuracy."  Id.

at 35.  The court therefore rejects Ancientree's argument, and concludes that substantial evidence

supports Commerce's determination that COGS provides the more-accurate starting point for

financial ratio calculation.

Second, with respect to Commerce's prior investigations, there is insufficient evidence that

Commerce has any "normal" or established past practice for the calculation of surrogate financial

ratios.  The determinations cited by Ancientree for the proposition that Commerce "has always

started with the [income] statement" for its ratio calculations fail to support this conclusion.  Pl.'s

Br. at 6.  Two of the cited determinations do not discuss financial ratio calculation at all in their

published IDMs.  See Multilayered Wood Flooring from the People's Republic of China: Final

Results of Antidumping Duty Admin. Rev., Final Determ. of No Shipments, and Final Partial

Rescission of Antidumping Duty Admin. Rev.; 2014–2015, 82 Fed. Reg. 25,766 (Dep't Commerce

June 5, 2017); Certain Hardwood Plywood Products from the People's Republic of China: Final

Determ. of Sales at Less Than Fair Value, and Final Affirmative Determ. of Critical

Circumstances, in Part, 82 Fed. Reg. 53,460 (Dep't Commerce November 16, 2017).  In two more,

the IDMs clearly state that Commerce based its surrogate financial ratio analysis on adjusted

COGS, just as it did in the present case.  MLWF 2013–2014 and accompanying IDM at 27–28;

Multilayered Wood Flooring from the People's Republic of China: Final Results of Antidumping

Duty Admin. Rev. and New Shipper Rev. and Final Determ. of No Shipments; 2017–2018, 85

Fed. Reg. 78,118 (Dep't Commerce December 3, 2020) and accompanying IDM at Cmt. 1.

Furthermore, as the Government notes, Ancientree fails to address the examples cited by

Commerce -- MLWF 2013–2014 and Nantong Uniphos Chems. Co. v. United States, 415 F. Supp.

3d 1345 -- for the proposition that Commerce in fact prefers to begin its analysis with COGS.

Def.'s Br. at 19.  As the only evidence of contrary past practice currently before the court is

therefore MLWF 2016–2017, and as "isolated investigations [do] not prove the existence of past

practice[]" but rather only that "Commerce thought differently on different facts and different

times," the court concludes that Commerce did not deviate impermissibly from its past practice by

basing its surrogate financial ratio calculation on COGS in the present case.  CP Kelco US, Inc. v.

United States, 39 CIT __, __, 2015 WL 1544714 at *10 (2015).

        Finally, the court rejects Ancientree's argument that Commerce's adjustments to COGS

amount to "mere speculation" and are therefore unsupported by substantial evidence.  Pl.'s Br. at

5.  Commerce explains its adjustments to COGS in detail in the Remand Results, and indicates the

general  accounting  principles  supporting  its  conclusions  that  (1)  production  overheads

encompassed all non-basic manufacturing costs, including energy costs, fixed personnel costs, and

depreciation; and (2) outside expenses, including energy and water, are encompassed within

production overhead.  Remand Results at 37–39.  Commerce acknowledges that its adjustments

necessarily require a degree of speculation simply because Commerce is not empowered to go

behind the information provided by surrogate manufacturers, but notes that the same is true of any potential analysis of Sigstrat's financial data -- including Ancientree's.  Id. at 39.  The court therefore concludes that Commerce has supported both its adjustments and its rejection of Ancientree's alternative approach with such evidence "a reasonable mind might accept . . . as sufficient."  Maverick Tube, 857 F.3d at 1359 (citation omitted).

## CONCLUSION

For the foregoing reasons, Commerce's methodology for calculation of surrogate financial ratios is supported by substantial evidence, and its Remand Results are sustained.  Judgment will enter accordingly in favor of Defendant.

**SO ORDERED.**

/s/      *Gary S. Katzmann*
Judge

Dated:  March 21, 2022
         New York, New York